INDEMNITY INSURANCE COMPANY OF NORTH AMERICA
*v.* OTIS ELEVATOR CO.

1. TRIAL—MOTION FOR DIRECTED VERDICT BY EACH PARTY.

Where each of the parties to an action requests the court to direct a verdict in his favor, the parties will be deemed to have constituted the court a trier of questions of fact.

2. INDEMNITY—ELEVATORS—HOTELS.

Indemnitor's rights, as assignee and subrogee of hotel against whom guests had recovered judgments for injuries sustained as result of negligence in connection with operation of elevator, are the same as, but no greater than, the rights of its. assignor, which had a maintenance contract with defendant elevator company.

3. NEGLIGENCE—CONCURRENT NEGLIGENCE—BURDEN OF PROOF—INDEMNITY.

Assignee and subrogee indemnitor, plaintiff in action against elevator company for alleged negligence resulting in injuries to assignor's guests, has the burden of establishing the negligence of defendant and assignor's freedom from concurrent negligence.

4. JUDGMENT—INNKEEPERS—ELEVATORS—INSURANCE.

Although a verdict and judgment for guest in his action against hotel for injuries sustained while a passenger in hotel elevator were determinative of all questions relative to guest's right to recover from hotel, where verdict did not indicate whether it was based upon negligence of the employees of the hotel, upon negligence of the elevator company as the hotel's agent or upon their concurrent negligence, they were not determinative of the question of defendant elevator company's liability to insurer of hotel on elevator liability policy.

5. INDEMNITY—WRONGFUL ACT OF ONE PERSON IMPOSING LIABILITY ON ANOTHER.

Where the wrongful act of one person results in liability being imposed on another, such other person may have indemnity from the person actually guilty of the wrong.

6. SAME—HOTELS—ELEVATORS—CONCURRENT NEGLIGENCE—BURDEN
   OF PROOF—EVIDENCE.

> In action by hotel company's indemnitor against elevator com-
> pany for sums paid under policy for injuries to hotel's guests
> while on its elevator, in which both sides moved for directed
> verdict at conclusion of plaintiff's proofs, plaintiff *held*, to
> have failed to sustain its burden of proof that hotel company,
> its assignor, was free from concurrent negligence, where
> evidence shows that it had failed to notify elevator company
> specifically that elevator failed to stop properly, permitted
> carriage of passengers before repairs were completed, and
> young, inexperienced employee of hotel, operating elevator with
> defendant's employee therein, lost control of the elevator.

Appeal from Kalamazoo; Miller (Guy A.), J., pre-
siding. Submitted June 4, 1946. (Docket No. 23,
Calendar No. 43,256.) Decided September 11, 1946.

Action by Indemnity Insurance Company of North
America, a corporation, as subrogee and assignee
of the Burdick Hotel Company, a Michigan corpora-
tion, against the Otis Elevator Company, a corpora-
tion, for amount paid on claims for injuries to
hotel's guests while on its elevator. Judgment for
defendant. Plaintiff appeals. Affirmed.

*Howard, Howard & Howard,* for plaintiff.

*Schaberg & Schaberg,* for defendant.

STARR, J. On February 8, 1942, the passenger
elevator in the Burdick hotel in Kalamazoo fell,
causing injuries to one John Bradley and other
passengers. Bradley sued the hotel company, al-
leging in substance that it was negligent in failing
to equip its elevator with suitable and effective
safety devices; in failing to inspect and keep its
elevator in a reasonably safe condition for use; and
in failing to discontinue use of the elevator when

it was known to be out of repair and unsafe for use. On jury trial Bradley obtained a verdict for $5,000, and judgment was entered for that amount. On appeal we affirmed the judgment. *Bradley* v. *Burdick Hotel Co.,* 306 Mich. 600. As the present suit is a sequel to the *Bradley Case,* our opinion in that case should be read prefatory to this opinion.

Prior to this elevator accident the Indemnity Insurance Company, plaintiff in the present case, had issued its policy of insurance to the hotel company whereby it agreed to pay "all sums which the insured shall become obligated to pay  *  *  *  for damages  *  *  *  caused by accident, and arising out of the existence, maintenance or use" of the elevators in the hotel. The policy also provided that the insurance company would defend any suit for personal injuries resulting from an elevator accident and that it would pay the expenses incurred in connection with such a suit. Prior to the accident defendant Otis Elevator Company had entered into a contract with the hotel company whereby it agreed to furnish "Otis maintenance" on the elevators in the hotel. This contract provided in part:

"Under this contract we will maintain the entire elevator equipment as hereinafter described, on the terms and conditions subsequently set forth. We will use trained men directly employed and supervised by us. They will be qualified to keep your equipment properly adjusted, and they will use all reasonable care to maintain the elevators in proper and safe operating condition. We will regularly and systematically examine, adjust, lubricate as required, and, if conditions warrant, repair or replace: (description of machinery, parts, and equipment).
*  *  *

"We also agree:  *  *  *
"To periodically examine all safety devices and governors, and equalize the tension on all hoisting

ropes; to renew all wire ropes as often as necessary to maintain an adequate factor of safety, and to repair and/or replace the following equipment: (description of equipment)."

Subsequent to our affirmation of the judgment in the *Bradley Case,* plaintiff insurance company paid Bradley the amount of his judgment and interest and costs, aggregating $5,646.39. It also paid for attorney fees, investigation, and defense of the Bradley suit the sum of $1,200. It also paid a total of $543 in settlement of the claims of three other passengers who were injured in the elevator accident. These payments aggregated $7,389.39.

In June, 1944, plaintiff, as subrogee and assignee of the hotel company, began the present suit against the Otis Company, alleging that it was negligent in failing to inspect, repair, and test the elevator properly. Defendant answered, denying the charge of negligence, and moved to dismiss the suit on the ground that, even assuming it was negligent, plaintiff still could not recover because its assignor, the hotel company, was guilty of concurrent negligence. This motion to dismiss was denied.

Subsequent to the beginning of the present suit, one Joseph Carrigan, who had been injured in the accident, obtained a judgment for $6,250 against the hotel company, and plaintiff paid that judgment together with costs and interest. It also paid attorney fees and expenses and the claims of other passengers who were injured in the accident. It then obtained leave to amend its declaration to include these additional payments. Defendant's motion to dismiss the amended declaration was denied, and the case was brought on for trial before a jury.

It was agreed that, as a result of the accident, plaintiff as insurer had paid out the sum of $15,-

133.95. The insurance policy issued by plaintiff to
the hotel company and the maintenance contract
between defendant and the hotel company were put
in evidence. The court reporter's transcript of
the testimony and the printed record on appeal in
the *Bradley Case* were also put in evidence. De-
fendant admitted that it had investigated the facts
relating to the elevator accident; that it had had
notice of the Bradley and Carrigan suits; that it
had had its representatives present at the trials of
both cases but had declined to defend them. De-
fendant presented no testimony, and at the con-
clusion of plaintiff's proofs each party moved for
a directed verdict. It was, in effect, agreed that
these motions took the case from the jury and sub-
mitted it to the court. *Arnold* v. *Krug*, 279 Mich.
702. The jury was excused, and the trial court en-
tered judgment of no cause of action. Plaintiff
appeals from this judgment.

It should be noted that the present case is not a
suit under Act No. 303, Pub. Acts 1941 (Comp. Laws
Supp. 1945, §14497a *et seq.*, Stat. Ann. 1945 Cum.
Supp. § 27.1683 [1] *et seq.*), for contribution between
joint tort-feasors against whom a joint judgment
has been recovered. Here the plaintiff, as assignee
and subrogee of the hotel company, seeks to recover
from the elevator company the full amount which
it had paid as the hotel company's insurer. Its
rights against the elevator company were the same
as, but no greater than, the rights of its assignor,
the hotel company. Had the hotel company brought
the present action, the burden would have been
upon it to prove itself free from concurrent negli-
gence. In 42 C. J. S. p. 626, § 35, it is stated:

"In an action by one wrongdoer to recover in-
demnity from another wrongdoer the burden of
proof is on plaintiff to show that the damages in

the first recovery were not occasioned by his own neglect or fault, but that they were occasioned by the negligence or default of defendant.''

Therefore, the burden was upon plaintiff to establish not only that the elevator company was negligent, but also that its assignor, the hotel company, was free from concurrent negligence. In the *Bradley Case*, under the doctrine of *respondeat superior*, the hotel company was liable to Bradley as its guest regardless of whether the negligence causing his injuries was that of the hotel company or that of its agent the elevator company. The jury's verdict for Bradley did not indicate whether it was based upon the negligence of the employees of the hotel, upon the negligence of the elevator company as the agent of the hotel or upon their concurrent negligence. The jury verdict and the judgment in that case were determinative of all questions relative to Bradley's right to recover from the hotel, but were not determinative of the question of the liability of defendant elevator company to plaintiff insurance company in the present case. *Grant* v. *Maslen*, 151 Mich. 466 (16 L. R. A. [N. S.] 910). The question of concurrent negligence as between the hotel and the elevator company was not directly presented or determined in that case. If the hotel company was free from concurrent negligence and if the negligence of the elevator company was the sole and proximate cause of the accident and resulting injuries, plaintiff, as assignee of the hotel company, would be entitled to recover indemnity from the elevator company. In *Village of Portland* v. *Citizens Telephone Co.*, 206 Mich. 632, 636, we said:

''It must also be recognized as a general rule that where the wrongful act of one results in liability being imposed on another such other person may

have indemnity from the person actually guilty of the wrong.''

Assuming, only for the purpose of this opinion, that the elevator company was negligent, the first question before us is whether or not plaintiff's assignor, the hotel company, was guilty of concurrent negligence. As the transcript of testimony and the record or appeal in the *Bradley Case* were the principal evidence adduced in the present suit, we shall quote briefly from our opinion in that case relative to the facts (pp. 602–604):

''On February 8, 1942, plaintiff (Bradley) was a guest in defendant's hotel. Shortly after noon, in company with several others, he entered the elevator at the seventh floor in order to descend to the first floor. * * * There was testimony that at about the fifth floor the elevator started to slip out of control and descended without any reduction of speed to the bottom of the shaft where it hit the bumpers with such force that plaintiff and other passengers were injured.

''The proof shows that the elevator was about 30 years old, that it was not equipped with all modern safety devices, that it had several such devices the proper installation of which was questioned by an expert witness. The elevator license granted by the city of Kalamazoo had expired January 1, 1940, and had not been renewed. Defendant had a maintenance contract with the elevator manufacturer (Otis Elevator Company) under which the manufacturer was employed to make all repairs and adjustments to keep the elevator operating.

''During the morning * * * the elevator had not been functioning properly. It had stopped in such a position that two women passengers had to be helped out of the cage by the operator. During the forenoon the hotel maintenance man had placed a new fuse in the service line, after which opera-

tion of the elevator was resumed. About noon the elevator ceased functioning and the manufacturer's maintenance man appeared in response to a call from the hotel. He tried to use the passenger elevator but as it would not work, he went to the top floor in the freight elevator. After making some repairs to the passenger elevator machinery in the penthouse, the operator was instructed by the repairman to continue operations. The maintenance man, according to his testimony, watched the machinery function for about 15 or 20 minutes and then came down from the penthouse to the seventh floor where he entered the passenger elevator to descend to the first floor in order to leave the building. When the maintenance man was on the elevator and as it had reached a lower floor, the operator received a down-call from the seventh floor. So the elevator was reversed by the operator and ascended to the seventh floor where plaintiff and others entered.

"At no time did the maintenance man actually operate the elevator. * * * One witness testified that at the time the elevator was reversed to go to the seventh floor to get plaintiff and others, it slipped two floors.

"During cross-examination of an expert witness produced by plaintiff, testimony concerning the American standard safety code was introduced. This is apparently a safety code for elevators and is generally recognized by the elevator trade in this country. Testimony was given that this code provides: 'Instructions to operators. Carry no passengers while inspections, repairs or adjustments are in progress, and operate the car only in response to directions from the inspector or person in charge.'"

It appears that the hotel company did not inform defendant's repairman of the fact that the elevator had been slipping and not functioning properly prior

to the accident. Furthermore, the record does not sustain plaintiff's contention that defendant's repairman had taken over control of the elevator and was in control of it at the time of the accident. A boy about 16 years old, who had been employed by the hotel for a week and a half, was operating the elevator. An agent of defendant who examined the elevator soon after the accident testified that he was not able to form any opinion as to what caused it to fall. Defendant's repairman, who was riding in the elevator at the time it fell, testified: "I do not know what might have caused this car to go to the basement in that manner." We agree with the trial court, who stated in his opinion:

"Notice was given to the elevator company manager that there was something wrong with the operation of the elevator, and its employee went to the hotel. He looked things over and found a blown-out fuse in the penthouse which he replaced. Nowhere in the record is there any testimony to the effect that he was advised that the elevator had been slipping or that it would not stop as it should. He never made any test runs himself, but was a passenger in the elevator when it fell.

"The testimony is enough, if submitted to a jury, to warrant a jury in concluding that the elevator operator himself, who was running the car, was so young and inexperienced that in an emergency he lost his head and failed to properly operate the controls. The jury could have found that the hotel company never notified the Otis Elevator Company that this car was slipping two or three floors when it was sought to be stopped. The testimony does not disclose that the hotel company stopped running the elevator. All that was done was that the boy who was running it notified someone at the desk. The officer at the desk gave no orders to discontinue the

running of the elevator, and during the very time while the repairman was examining the mechanism, it was being run up and down and carrying passengers. All this course of conduct, in my judgment, clearly discloses a state of facts where it was within the power of the jury to find that, while the Otis Elevator Company did not do a workmanlike job of servicing and repairing, the hotel company kept on running an elevator which was out of condition under circumstances under which a reasonably prudent man would not have done so.

"In point of fact all of these matters and more were submitted carefully to the jury which tried the *Bradley Case*. The question was submitted to them, whether in view of these facts which have been mentioned and others, the Burdick Hotel Company was guilty of negligence. This submission was, of course, coupled with submission of the question whether the things that were done by the Otis Elevator Company were sufficient to amount to reasonable care under the circumstances. The jury brought in a general verdict. It is quite impossible to separate the grounds for this general verdict, and the only thing that this court can do is to say that the jury found that the Burdick Hotel Company was guilty of negligence. It might have been guilty of negligence only because of what the Otis Elevator Company did, but this record does not clearly show that. That proposition is a matter which must be shown by this plaintiff in order to recover in this case. The verdict of the jury might be one which rested upon not only the negligent conduct of the Otis Elevator Company, but also upon the negligent conduct of the Burdick Hotel Company. There was evidence in the record to support such conclusion."

As hereinbefore stated, the burden was upon plaintiff to establish that its assignor, the hotel company, was free from concurrent negligence. From our examination of the records in both this and the

*Bradley Case,* we are convinced that plaintiff failed to sustain this burden of proof.    Other questions presented do not require determination.

The judgment for defendant is affirmed.    Defendant may recover costs of both courts.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.