CITY OF DETROIT v. BRIDGEPORT BRASS COMPANY

1. SUBROGATION—CONVENTIONAL SUBROGATION—LEGAL SUBROGATION—
   DEFINITION.
   Conventional subrogation arises from an agreement voluntarily
   entered into by the subrogee and the subrogor which expresses
   the obligation of, or the consideration to be paid by, the sub-
   rogee in exchange for the right of subrogation; legal subroga-
   tion, however, is where the subrogee acts out of a sense of
   moral or legal obligation or interest and arises as a matter
   of law independently of, or in spite of, contract.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  50 Am Jur, Subrogation § 10 et seq.
[3–5]  50 Am Jur, Subrogation §§ 126, 135.

2. SUBROGATION—CONVENTIONAL SUBROGATION—VALIDITY.

Conventional subrogation, although voluntary in the sense that it is the product of agreement between the parties, is recognized as an enforceable right.

3. MUNICIPAL CORPORATIONS—SUBROGATION—RIGHT TO SUBROGATION.

A city is not precluded from obtaining an assignment of an injured person's rights in exchange for a reasonable consideration; assignments of contingent unliquidated claims can be made in advance of the injuries giving rise to the claims where the assignee obligates himself to pay a reasonable amount for the unliquidated claims.

4. MUNICIPAL CORPORATIONS—CONVENTIONAL SUBROGATION—DISABILITY PENSIONS.

A city's charter providing that it is obligated to pay an injured employee a duty disability pension and that the city shall be subrogated to the rights of the injured party against a third-party tortfeasor to the extent of the benefits the city pays or becomes liable to pay to the employee creates, when payments are accepted by the employee, a valid conventional subrogation of rights.

5. MUNICIPAL CORPORATIONS—CONVENTIONAL SUBROGATION—DISABILITY PENSION—ENABLING LEGISLATION.

A city does not need enabling state legislation to entitle it to assert a right of conventional subrogation based on duty disability pension payments to an injured employee where the pension benefits are not payable as a result of a mandate imposed by the state, because the city, having voluntarily assumed the obligation of payment, is free to impose reasonable conditions on its enjoyment.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 February 10, 1969, at Detroit. (Docket No. 5,976.) Decided November 27, 1970. Leave to appeal denied April 15, 1971. 384 Mich 828.

Complaint by Frances L. Cisek against the Bridgeport Brass Company, Peterson-Howell-Heather Company, D. L. Peterson, and John C. MacKean, for negligence. The City of Detroit and General Retirement System of the City of Detroit, inter-

vening party-plaintiffs, claimed subrogation to Cisek's rights. Summary judgment for defendants against intervening plaintiffs. Intervening plaintiffs appeal. Reversed and remanded.

*Michael Glusac,* Corporation Counsel, and *Nick Sacorafas,* for the City of Detroit.

*Plunkett, Cooney, Rutt & Peacock (Jeannette A. Paskin,* of counsel), for defendant.

Before: LESINSKI, C. J., and LEVIN and DANHOF, JJ.

LEVIN, J. Frances L. Cisek, a bus driver employed by the Department of Street Railways of the City of Detroit, was seriously injured when the bus he was driving collided with an automobile being driven by defendant John C. MacKean.

Cisek and his wife commenced this action claiming that his injuries were caused by MacKean's negligent driving and that the corporate defendants are liable because defendant Peterson-Howell-Heather Company owned the automobile MacKean was driving and defendant Bridgeport Brass Company employed MacKean and he was on Bridgeport's business at the time of the accident.

On account of his injuries, Cisek received from his employer, the City of Detroit, workmen's compensation benefits and, as well, a duty disability pension. The pension was paid by the city's general retirement system. The city was granted leave to intervene in this action to assert claims of subrogation to Cisek's rights against the defendants.

The retirement system appeals a summary judgment entered by the trial court granting defendants' motion for dismissal of the retirement system's

complaint on the ground that it fails to state a claim upon which relief can be granted.

The city's undoubted statutory right of subrogation[1] in respect to the workmen's compensation benefits paid Cisek is not in dispute. At issue is the separate claim of the retirement system that it is entitled to be subrogated to Cisek's rights against the defendants to the extent of the disability pension benefits paid and payable. The city does not rest the retirement system's subrogation claim on a statutory provision establishing the right to assert the claim, as in the case of workmen's compensation, or upon equitable or common-law principles; it relies on a provision in Detroit's charter.

Under the charter, the retirement system is obligated to pay Cisek a duty disability pension as long as he remains totally incapacitated by reason of duty-connected injuries and when he attains the age of 60 years the duty disability pension is to be converted to a service retirement pension.

The city's claim for reimbursement is based on the following provision of the charter:

"In the event a person becomes entitled to a pension payable by the retirement system because of an accident or injury caused by the act of a third party, the city shall be subrogated to the rights of the said person against such third party to the extent of benefits which the city pays or becomes liable to pay." Detroit Charter, Title 9, ch 6, art 6, part F, § 2.

The defendants successfully contended in the trial court that the retirement system cannot acquire rights of subrogation because it simply paid its voluntarily-assumed obligation to Cisek and that

---

[1] MCLA § 413.15 (Stat Ann 1968 Rev § 17.189). Repealed by PA 1969, No 317, effective December 31, 1969; for comparable section see MCLA § 418.827 (Stat Ann 1970 Cum Supp § 17.237[827]).

only one who pays under constraint, not a volunteer, can acquire rights of subrogation. Defendants also argue that, in contrast with workmen's compensation, here there is no state law creating a right of subrogation on the part of the employer against third-party tortfeasors. The distinctions which the defendants urge are factually correct but do not withstand analysis.

Rights of subrogation can, indeed, arise when a subrogee acts under some legal constraint or out of a sense of moral obligation or other interest; a common example is the discharge by the subrogee of the debt of another for which he or his property is contingently liable. In this connection it has been said that rights of common law or equitable subrogation cannot arise in favor of a mere volunteer.[2] The general retirement system's subrogation claim does not, however, depend on equitable or common-law principles. In addition to "legal" subrogation based on equitable or common-law principles, the law recognizes subrogation based on agreement, sometimes called "conventional" subrogation because the subrogation right is based on a convention or agreement entered into by the parties.[3]

---

[2] 50 Am Jur, Subrogation, § 21, p 696; Restatement Restitution, § 162, p 653.

[3] See, generally, 83 CJS, Subrogation, § 1, p 577; 50 Am Jur, Subrogation, § 3, pp 679, 680.

Rights of conventional subrogation typically arise when a subrogee, not contingently liable or otherwise already interested, pays the debt of a third party and obtains from the creditor, by agreement with him, a transfer of his rights against the debtor. (See 83 CJS, Subrogation, § 4, p 586; 50 Am Jur, Subrogation, § 3, p 680.) There is, however, no reason to limit the use of the "conventional subrogation" terminology to the factual context from which it, apparently, stems. See *Hospital Service Corporation of Rhode Island* v. *The Pennsylvania Insurance Company* (1967), 101 RI 708 (227 A2d 105); *Redmon* v. *M. B. Salisbury Company* (1955), 178 Kan 639 (290 P2d 809); *City of New York Insurance Company* v. *Tice* (1944), 159 Kan 176 (152 P2d 836); *Davenport* v. *State Farm Mutual Automobile Insurance Company* (1965), 81 Nev 361 (404 P2d 10).

Conventional subrogees are generally, perhaps always, volunteers; they voluntarily enter into the convention which expresses the obligation of, or the consideration to be paid by, the subrogee in exchange for the subrogation right. This is in contrast with legal subrogation, where the subrogee acts out of a sense of moral or legal obligation or interest and which arises as a matter of law independently of, or in spite of, contract. The "mere volunteer" exegesis of subrogation imposed by operation of law does not limit subrogation based on agreement.[4]

There is no principle of law which precluded the city from obtaining an assignment of an injured person's rights in exchange for a reasonable consideration. An assignment of a contingent unliquidated claim can be made in advance of the injury giving rise to the claim, at least in a case like this where the assignee obligates himself to pay a reasonable amount for the claim.[5] By his acceptance of the pension benefits, Cisek is deemed to have agreed to the *pro tanto* assignment or conventional

[4] *The Kansas City Title & Trust Company* v. *The Fourth National Bank in Wichita* (1932), 135 Kan 414 (10 P2d 896, 87 ALR 334); 50 Am Jur, Subrogation, § 21, pp 696, 697.

[5] The assignability of choses in action for personal injury resulting from tortious acts depends, generally, on whether the action survives the death of the injured person; if the action survives the chose is assignable. It is generally held that the enactment of statutes providing for survival of such actions operates incidentally to remove the restriction on assignability. 6 Am Jur 2d, Assignments, § 39, p 222.

In Michigan "all actions and claims survive death." MCLA § 600-.2921 (Stat Ann 1962 Rev § 27A.2921); in Michigan a chose in action for personal injuries resulting from a tortious act that under the earlier (and less generally worded) statute would survive the death of the injured person is assignable. *Grand Rapids & I. R. Co.* v. *Cheboygan Circuit Judge* (1910), 161 Mich 181, 191. *Cf. Indemnity Insurance Company of North America* v. *Otis Elevator Co.* (1946), 315 Mich 393.

Contrast *City of Birmingham* v. *Walker* (1958), 267 Ala 150 (101 So 2d 250, 70 ALR2d 464) cited by the defendants; but under Alabama law rights of action for tort do not survive.

subrogation of his rights against third-party tort-feasors provided for in the city's charter.[6]

The essence of the agreement relied on by the city is that in exchange for the duty disability pension the injured employee transfers whatever rights he has against third-party tortfeasors to the general retirement system to the extent of the benefits which the city pays or becomes liable to pay. The legal analysis may be somewhat confused by the use of the term "subrogated," which is ambiguous unless modified by the qualifying "legal" or "conventional", but the intention is clear and it is the intention which we effectuate.[7]

Nor is there any need for enabling state legislation to entitle the city to assert a right of conventional subrogation. The analogy of workmen's compensation is inapposite. Workmen's compensation benefits are required to be paid by state law; understandably, some courts have held that an employer cannot, unless statutorily authorized, reduce his liability by asserting a subrogee's interest in the employee's rights against third-party tortfeasors.[8] And, thus, if there is to be subrogation in favor of an employer as to his workmen's compensation liability, action by the state legislature is indicated. Here, however, the pension benefits are not payable

---

[6] The terms of the assignment are reasonable. The city is to receive no more than such sum as will reimburse it for its expenditures to Cisek. No issue of adhesion is presented; see *Allen* v. *Michigan Bell Telephone Company* (1969), 18 Mich App 632.

[7] In stating that "the city shall be subrogated to the rights of the said person against such third party," the charter says in effect that the injured employee transfers whatever rights he may have against the third party to the city "to the extent of benefits which the city pays or becomes liable to pay".

[8] See, generally, 58 Am Jur, Workmen's Compensation, § 358, pp 817, 818; 2 Larson, Workmen's Compensation Law, § 74.11, p 226.78; *City of Evansville* v. *Byers* (1964), 136 Ind App 448 (202 NE2d 399); *Standard Oil Co. of California* v. *United States* (CA 9, 1946), 153 F2d 958; *City of Birmingham* v. *Walker, supra;* contrast *Potoczny, et al.* v. *Vallejo* (1952), 170 Pa Super 377 (85 A2d 675).

as a result of a mandate imposed by the State. The city voluntarily assumed this obligation.[9] It is, therefore, free to impose reasonable conditions on its enjoyment which, if accepted, as they were here when the disability benefits were paid and accepted,[10] become a convention validating the city's conventional subrogation claim.[11]

Reversed and remanded for reinstatement of the third-party complaint.

All concurred.

---

[9] The home rule act empowers the city to provide in its charter "for a system of compensation for its employees and their dependents in the case of disability, injury or death of such employees." MCLA § 117.4i (Stat Ann 1970 Cum Supp § 5.2082).

[10] Our disposition of this case makes it unnecessary to consider whether the convention was entered into at some earlier time.

[11] *Michigan Medical Service v. Sharpe* (1954), 339 Mich 574, 578, is not controlling. There the plaintiff conceded, the court did not hold, that a third-party tortfeasor could not be held liable under the provisions of a contract to which it was not a party. Moreover, the pertinent language there was not self-executing, as it is here—the injured party in the cited case had not executed the assignment; here the city's rights are not dependent on whether Cisek signs an instrument of assignment or transfer.

And since the employee Cisek, by accepting the disability benefits, is deemed to have agreed to the city acquiring *pro tanto* his rights against third-party tortfeasors, our decision does not erode the Michigan collateral source rule that payment by the employer to an injured employee does not reduce the tortfeasors' liability to pay the employee his full damages. See *Motts* v. *Michigan Cab Co.* (1936), 274 Mich 437, 442; *Royer* v. *Eskovitz* (1960), 358 Mich 279, 283; *Canning* v. *Hannaford* (1964), 373 Mich 41, 45.

In *Loman* v. *Harrelson* (Mo App, 1968), 437 SW2d 123, and *City of New York* v. *Barbato* (1938), 5 NYS2d 125, the city made a voluntary payment and failed to provide itself with rights of reimbursement. *Cf. Ford* v. *Kuehne* (1928), 242 Mich 428, 433.

In *Martz* v. *Consumers Power Co.* (ED Mich, 1951), 101 F Supp 853, the city paid pension benefits to the widow of an employee who had died in the course of his employment. The city's charter contained a subrogation reimbursement clause worded substantially as is Detroit's. The court construed the clause as inapplicable to the proceeds of an action for wrongful death brought by the administrator of the employee's estate. The court observed that the alleged subrogor, the widow, had no cause of action under the death act; only the decedent's personal representative may bring that action.