Sandra McPIKE, Administratrix of the Estate of Samuel D. McPike, deceased, Plaintiff,

v.

DIE CASTERS EQUIPMENT CORPORATION, a Foreign Corporation and Lyle D. Green, Jr., Defendants,

v.

DU–WEL PRODUCTS, INC. et al., Third-Party Defendants.

No. K75–188 CA 8.

United States District Court, W. D. Michigan, S. D.

Dec. 29, 1980.

F. William McKee, and Ben T. Liu, of Rhoades, McKee & Boer, Grand Rapids, Mich., for Die Casters Equipment Corporation, defendant and third-party plaintiff.

Jon R. Muth, and Richard R. Hyde, of Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Du-Wel Metal Products, Inc., third-party defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Du-Wel Products, Inc. (hereinafter called "Du-Wel"), one of the third-party defendants in this case, has moved for summary judgment against Die Casters Equipment Corporation (hereinafter called "Die Casters"), the third-party plaintiff. Du-Wel's motion has required this Court to review, evaluate, and harmonize various statutes and cases in an attempt to determine what effect, if any, Michigan's adoption of the doctrine of pure comparative negligence [1] has on the ability of a manufacturer or supplier of allegedly defective machinery or equipment to seek indemnity or contribution [2] from an employer who already has settled the injured employee's claims against it under the Michigan Worker's Disability Compensation Act, M.C.L.A. §§ 418.-101–418.941, M.S.A. §§ 17.237(101)–17.-237(941) (1969). For all of the reasons which follow, this Court agrees with Du-Wel that Die Casters's third-party complaint fails to state a valid claim upon which relief can be granted, and the third-party action against Du-Wel must be dismissed.[3]

## I. FACTUAL BACKGROUND

The plaintiff's husband was an employee of Du-Wel. On January 31, 1974, Samuel McPike was killed while operating a die casting machine in the normal course of his

---

1. The doctrine of pure comparative negligence was adopted by the Michigan Supreme Court in *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979).

2. Although this Court has heard argument by counsel on the possible effect of the adoption of pure comparative negligence on Die Casters's right to seek some form of contribution from Du-Wel, it should be noted that Die Casters has stated in its pleadings a claim for indemnity only. However, in light of this Court's disposition of Du-Wel's motion for summary judgment, and since counsel for Du-Wel has not demonstrated any prejudice stemming from Die Casters's having argued for a right to contribution without having formally sought it, this Court exercises its discretion and will consider Die Casters's position on the contribution issue as if it had been preserved formally in its pleadings.

3. On July 21, 1980, this Court granted Die Casters leave to amend its third-party complaint to add Koehring Company as a third-party defendant. Since the resolution of the issues presented by Du-Wel's motion for summary judgment arise by virtue of Du-Wel's unique position as the employer of the injured party, this opinion should not be construed as having general application outside of the context of the Worker's Disability Compensation Act and the availability of the rights to seek indemnity or contribution from an employer who has settled all claims against it under that Act.

employment. Du-Wel had purchased this die casting machine from Die Casters; Die Casters had purchased this machine from an "unknown previous owner."

Die Casters alleges that this die casting machine was not operable at the time it was sold to Du-Wel. Die Casters alleges that this machine was sold "as is" and had not been rebuilt by Die Casters before it was sold to Du-Wel. Significantly, Die Casters contends that the wiring necessary for the operation of this die casting machine was not in place when the machine was sold to Du-Wel.

Die Casters alleges that Du-Wel had the machine rewired at some time after Du-Wel acquired the die casting machine. It is Die Casters's contention that any defect in the machinery which it had sold Du-Wel proximately resulted from the act of rewiring the machine, and not from any independent acts or omissions for which Die Casters might be responsible. Samuel McPike's widow sued Die Casters and the electrician who initially wired the machine for operation at Du-Wel's plant. Her complaint contains four counts: negligence in failing to use the requisite degree of care in the design, manufacture, sale, installation, rebuilding, rewiring, and maintenance of the die casting machine; strict liability for selling a defective product which was not reasonably safe for its intended use; breach of implied warranty; and fraud and deceit. Die Casters then filed a third-party complaint seeking indemnification from Du-Wel for any amounts Die Casters may be required to pay in the plaintiff's action against it. Die Casters's action against Du-Wel for indemnification is based on the allegation that any liability to Mrs. McPike "will be on account of the passive and secondary acts of Die Casters. ... and the primary negligent acts of Du-Wel ...." Third-Party Complaint, ¶ 7.

## II. DISCUSSION

### A. *Standards for Summary Judgment*

Rule 56 of the Federal Civil Procedure, in relevant part, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment is a matter of law.

Du-Wel, as the moving party, must bear the burden of clearly establishing the nonexistence of any genuine issue of any fact material to judgment in its favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once Du-Wel has succeeded in this showing, Die Casters "may not rest upon the mere allegations or denial of [its] pleading," but most come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). For the purposes of this motion, evidentiary matters submitted have been taken at "face value." *Begnaud v. White*, 170 F.2d 323, 326–27 (6th Cir.1948).

In deciding the question before this Court, all inferences drawn from underlying facts contained in the affidavits, exhibits, pleadings, admissions, and answers to interrogatories were viewed in a light most favorable to Die Casters. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Adickes v. S. H. Kress & Co., supra*, at n. 15, 90 S.Ct. at 1608 n. 15 (citing cases); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962). This Court is required to view this matter in a light most favorable to Die Casters, for even if the basic facts are not in dispute, summary judgment is not appropriate when contrary inferences may be drawn from those facts. *United States v. Diebold, Inc., supra; Equal Employment Opportunity Commission v. United Association of Journeymen & Apprentices, Etc.*, 427 F.2d 1091, 1093 (6th Cir. 1970).

### B. *Effect of* Placek *on the Doctrines of Joint and Several Liability, Contribution, and Indemnity*

#### 1. *Effect on Joint and Several Liability*

■ Die Casters has argued that the adoption of pure comparative negligence in

Michigan necessitates the abandonment of the principle of joint and several liability. However, as recently as August 12, 1980, the Court of Appeals of Michigan ruled that the doctrine of comparative negligence does not require the abandonment of joint and several liability. In *Weeks v. Feltner*, 99 Mich.App. 392, 297 N.W.2d 678 (1980), Judge Holbrook wrote:

> Defendants ... claim that the doctrine of comparative negligence mandates an abandonment of the concept of joint and several liability. Defendants requested, and were denied, an instruction requiring the jury to apportion damages between [sic] the various defendants. Defendants contend that comparative negligence requires that a defendant only be liable to the extent of his own wrongdoing, not only in relation to the plaintiff, but in relation to other defendants as well. See *Placek v. City of Sterling Heights*, 405 Mich. 638; 275 N.W.2d 511 (1979).
>
> This argument ignores the fact that the comparative negligence doctrine also seeks to assure fair and adequate compensation for injured plaintiffs. Unlike the concept of contributory negligence, it avoids unduly penalizing a plaintiff for his own fault. While some unfairness exists when one defendant is held liable for the fault of his codefendants, this is equally true of cases where the plaintiff is not at fault. The acts of [one of the defendants] were foreseeable by the other defendants and there is nothing inherently inequitable in holding them liable for the resulting injury. *The doctrine of comparative negligence does not mandate abandonment of joint and several liability. In fact, a majority of other jurisdictions considering the issue have retained joint and several liability.* See, V *Schwartz*, Comparative Negligence, Sec. 16.4 (Supp.1978).

*Weeks v. Feltner, supra,* 99 Mich.App. at 394, 297 N.W.2d at 680 (emphasis supplied).

The principal reason for retaining joint and several liability is that an indivisible injury does not become divisible merely by virtue of adopting pure comparative negligence for purposes of assessing liability *ab initio*. When the acts or omissions of two or more tortfeasors coalesce and result in an indivisible harm, those tortfeasors can be held jointly or severally liable for their acts or omissions. The reasoning in *Weeks* hinges on this rationale. Accordingly, this Court cannot agree with Die Casters that the doctrine of joint and several liability must be abandoned.

The *Weeks* rationale was applied in the context of a worker's compensation case in *Tucker v. Union Oil Co.*, 100 Idaho 590, 603 P.2d 156 (1979). In that case, an owner of 78% of the stock of the plaintiff's employer corporation was held liable personally for 60% of the injuries to the plaintiff. In the course of rendering its opinion, the Idaho Supreme Court said that the rule of joint and several liability is designed to assure an accident victim a full compensation for his injuries and was not displaced or abolished by the adoption of a comparative negligence system. The court further said that adoption of a system based on comparative fault would not operate to compromise the integrity of the "bedrock principle" of joint and several liability of concurrent successive wrongdoers for the plaintiff's entire and indivisible injuries. This Court agrees with the *Weeks* and *Tucker* courts on this issue.

## 2. Effect on Contribution

■ The question of the effect of *Placek* on a third-party plaintiff's right to contribution where the third-party defendant has undertaken all obligations owed under the Michigan Worker's Disability Compensation Act was raised in *Venters v. Michigan Gas Utilities Co.*, 493 F.Supp. 345 (W.D.Mich. 1980), in an opinion written by Judge Hillman of this Court. In his succinct, well-reasoned treatment of the issue, Judge Hillman held that the plaintiff's employer could not be impleaded as a third-party defendant for the purposes of contribution where that employer had met fully all of his duties to the injured plaintiff-employee under the Worker's Disability Compensation Act.

Section 131 of the Worker's Disability Compensation Act provides:

The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section ... "employee" includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and "employer" includes his insurer, a service agent or a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract.

M.C.L.A. § 418.131, M.S.A. § 17.237(131). Accordingly, Section 131 provides that an employee's remedy against an employer lies exclusively under the Act when that Act is applicable. *See Solakis v. Roberts*, 395 Mich. 13, 233 N.W.2d 1, aff'g 54 Mich.App. 370, 221 N.W.2d 214 (1974) (collecting cases).

In *Nanasi v. General Motors Corp.*, 56 Mich.App. 652, 224 N.W.2d 914 (1974), the court held that the exclusive remedy provisions of Section 131 precluded a third-party claim against the employer on the theory of common-law contribution as the sole basis for relief. Moreover, as Judge Hillman said in *Venters*:

> ... A right to contribution arises when tortfeasors have a common liability to the plaintiff. *Moyses v. Spartan Asphalt Paving Company*, 383 Mich. 314, 174 N.W.2d 797 (1970). A common liability may exist even though the parties are found liable on separate theories of law and for separate acts, if the concurrence of their acts was the proximate cause of a single, indivisible injury to the plaintiff. Where a common liability exists, each individual wrongdoer may be held liable to the plaintiff for the entire amount of the damages. *Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975). If one pays more than his pro-rata share, however, by Michigan statute, he is entitled to contribution from the other wrongdoers. M.C.L.A. § 600.2925a M.S.A. § 27A.2925a.

Because the third-party plaintiff's claim of contribution against the third-party defendant is derivative of the principal plaintiff's right, an impleader action would require a finding that, with respect to the plaintiff, the employer and the third-party plaintiff are joint tortfeasors. But this would violate the exclusive remedy provision of Section 131. Under the worker's compensation law, an employer has no common liability, and is not a joint tortfeasor with the defendant. [*Husted v. Consumers Power Company*, 376 Mich. 41, 135 N.W.2d 370, 376 (1965).]

*Venters v. Michigan Gas Utilities Co., supra*, 493 F.Supp. at 348.

Die Casters contends, as argued by the third-party plaintiff in *Venters* also, that the employer immunity rule should not be given effect because of the adoption of pure comparative negligence in *Placek* by the Michigan Supreme Court. This Court agrees with Judge Hillman, who disposed of this argument as follows:

> ... [*Placek*] concerned only the apportionment of fault between the plaintiff and the defendant. It did not involve a third-party complaint of worker's compensation, and the Court did not reach the effect of comparative negligence on impleader, joint and several liability, or contribution. *See*, 275 N.W.2d at 537, n. 11 (Coleman, C. J., concurring in part, dissenting in part). Nevertheless, [the third-party plaintiff] urges this court to strike down employer immunity on the ground it is inconsistent with the philosophy of *Placek* and unfair. It maintains that [the employer] should be joined as a third-party defendant in order to accurately calculate relative degrees of fault.

> This the court declines to do. No compelling reason has been presented to the court for striking down employer immunity. There are simpler ways to fairly calculate any damages [the third-party plaintiff] may owe plaintiffs without overturning an integral part of a complex legislative scheme for insuring worker protection, enacted nearly 70 years ago.

Admittedly, the third-party plaintiff raises interesting questions of first impression in this court.... These questions, however, are properly left to the legislature and judiciary of the state to decide. I hold that [the employer] cannot be joined by [the third-party plaintiff] as a third-party defendant for the purposes of contribution.

*Venters v. Michigan Gas Utilities Co., supra,* 493 F.Supp. at 349.[4]

### 3. Effect on Common Law Indemnity in Products Liability Actions

■ By now, it is clear that *Placek* has not affected Michigan's law of indemnity. As more fully appears below, Michigan law regarding indemnity is in harmony with *Placek,* for indemnity also seeks to accomplish "the goal of a fair system of apportionment of damages"[5] by allowing any person free from fault, but found to be vicariously liable for the fault of another, to seek indemnity from the third-party. *Indemnity Ins. Co. v. Otis Elevator Co.,* 315 Mich. 393, 24 N.W.2d 104 (1946); *Minster Machine Co. v. Diamond Stamping Co.,* 72 Mich.App. 58, 248 N.W.2d 676 (1976); *Proctor & Schwartz, Inc. v. United States Equip. Co.,* 624 F.2d 771 (6th Cir. 1980); *Prosky v. National Acme Co.,* 404 F.Supp. 852 (E.D.Mich.1975).

In *Conkright v. Ballantyne of Omaha, Inc.,* 496 F.Supp. 147 (W.D.Mich.1980), Chief Judge Miles observed:

[The defendant's] indemnity claim ... rests upon the possibility that the finder of fact might determine [that the party seeking indemnity is] vicariously liable for negligent acts of [a third party]. If this were the basis for [its] liability, the claim is that [the party seeking indemnity] would be entitled to indemnification

from [that third party]. This theory appears to be consonant with Michigan case law providing that one who is personally free from fault but is found to be vicariously liable for the fault of another is entitled to indemnity from the one at fault. [Citations omitted.] The Michigan products liability statute does not purport to address the matter of common law indemnity, and neither does *Placek* ; ... [u]nlike contribution on a pro rata basis, indemnity conflicts in no way with a rule of comparative negligence ...; on the contrary, indemnity is in harmony with these principles, and can actually be viewed as [an] historical and conceptual predecessor of the more sophisticated approach of comparative fault. Thus I must again concur with [*Jorae v. Clinton Crop Service,* 465 F.Supp. 952, 957 (E.D. Mich.1979)], in deciding that the Michigan law of indemnity is unaffected by the development of comparative negligence.

*Conkright v. Ballantyne of Omaha, Inc., supra,* 496 F.Supp. at 151. In *Jorae,* Judge Joiner stated:

... Prior to the effective date of [the products liability statute], Michigan case law provided that indemnity is required only when the charging party can prove that it has been found liable to a third party, not because of any fault of its own, but because of its relationship to the party at fault from whom indemnification is sought. [Citations omitted.] Since [that statute] does not address the law respecting the establishment of the right of indemnification, Michigan case law is unchanged as to how indemnity claims are to be evaluated.

*Jorae v. Clinton Crop Service, supra,* 465 F.Supp. at 957. This Court agrees with the

---

**4.** Since Section 131 and the general principles governing the right to seek common law contribution have operated in concert to resolve the contribution question presented by Die Casters in this case, this Court's ruling should not be construed as offering any opinion concerning the efficacy of the so-called doctrine of "comparative contribution" to which various courts have alluded in products liability actions. *See, e. g., Jorae v. Clinton Crop Service,* 465 F.Supp.

952 (E.D.Mich.1979); *Conkright v. Ballantyne of Omaha, Inc.,* 496 F.Supp. 147, 151 (W.D. Mich.1980). The issues presented in those cases are not before this Court since Section 131 applies to the parties here. *See generally* Annot., 28 A.L.R.3d 943 (1969); Annot., 53 A.L.R.3d 184 (1973).

**5.** *Placek v. City of Sterling Heights, supra,* 275 N.W.2d at 519.

reasoning of *Conkright* and *Jorae* and holds that the adoption of pure comparative negligence in Michigan does not alter Michigan law affecting common law indemnity.

### C. Analysis of Die Casters's Common Law Indemnity Action Against Du-Wel

■ As Judge Hillman observed in *Venters*, Section 131 of the Michigan Worker's Disability Compensation Act does not deprive a party of a third-party action against an employer for indemnity. Further, as the court in *Nanasi v. General Motors Corp.*, supra, indicated, an employer may be joined under proper circumstances as a third-party defendant on an indemnity theory without violating the provision of Section 131 that worker's compensation benefits shall be the exclusive remedy against employers. As Judge Hillman said, "the doctrine [of indemnity] is distinct from contribution: it is not derivative of the plaintiff's right against the third-party defendant but rather arises from a separate duty owed by the third-party defendant to the third-party plaintiff." *Venters v. Michigan Gas Utilities Co.*, supra, 493 F.Supp. at 349.

■ However, in order for it to maintain an indemnity action against Du-Wel, Die Casters must allege some basis for recovery on common law indemnity grounds. For the reasons which follow, this Court believes that Die Casters has failed to meet its burden on this issue and Du-Wel's motion for summary judgment accordingly must be granted.

■ "[W]here the wrongful act of one results in liability being imposed on another, such other person may have indemnity from the person actually guilty of the wrong." *Indemnity Ins. Co. v. Otis Elevator Co.*, supra, 315 Mich. at 389–99, 24 N.W.2d at 106. A claim for indemnity will lie only against the party guilty of "active" negligence, for indemnification is founded upon equitable principles. Thus, it is well established that one alleging common law indemnity must plead and prove freedom from fault, that is, freedom from active, causal negligence. *Husted v. Consumers Power Co.*, supra; *Dale v. Whiteman*, 388

Mich. 698, 202 N.W.2d 797 (1972); *Nanasi v. General Motors Corp.*, supra, 224 N.W.2d at 917; *Provencal v. Parker*, 66 Mich.App. 431, 239 N.W.2d 623 (1976); *McLouth Steel Corp. v. A. E. Anderson Construction Corp.*, 48 Mich.App. 424, 430–31, 210 N.W.2d 448 (1973), *leave to appeal denied*, 391 Mich. 754 (1973); *Moore v. Lewis Mfg. Co.*, 406 F.Supp. 1225 (E.D.Mich.1976). In permitting indemnity from an employer despite the immunity accorded by the Worker's Disability Compensation Act, the Michigan Supreme Court based its decision on a showing that third-party plaintiff was "without personal fault" and the third-party defendant was "a party best situated to adopt preventive measures and thereby reduce the likelihood of injury." *Dale v. Whiteman*, supra, 388 Mich. at 706, 202 N.W.2d 801.

In diversity cases, this Court must apply the law of the forum, and it is not this Court's responsibility to determine what it believes to be the best or most fair resolution of the issues presented by the adoption of pure comparative negligence in Michigan through the *Placek* decision. Rather, this Court must determine which approach the highest state court most likely will follow in the future when the issues presented to this Court in this case arise in that court. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Fortunately, however, since the hearing on Du-Wel's motion for summary judgment, the Michigan Court of Appeals has rendered an opinion on this issue in *Langley v. Harris Corporation*, No. 45977 (Mich.App.1980). On September 19, 1980, a panel of that court decided in an opinion *per curiam* that a third-party defendant-employer, having met all of its obligations under the Worker's Disability Compensation Act, was not liable on indemnity grounds to a third-party plaintiff without a showing of the requisite vicariousness of liability needed to plead a claim for indemnity successfully. In *Langley*, the employer was named as a principal party-defendant in an action brought by an employee for injuries suffered when a press manufactured and designed by Harris Corporation's predecessor corporation malfunctioned and injured the plaintiff-employee.

The employer successfully moved for summary judgment under Section 131 of the Worker's Disability Compensation Act, but Harris Corporation thereafter filed a third-party complaint against the employer for indemnity.

In affirming the trial court's summary judgment in favor of the employer on the grounds that Harris Corporation had failed to state a claim upon which relief could be granted, the court observed:

> [Harris Corporation] contends that any potential liability to [plaintiff] is liability without personal fault, and that if it is held liable it will be only by operation of law and not by any actual wrongdoing. Accordingly, it argues it is entitled to indemnity from the employer on the basis of *Dale v. Whiteman*, 388 Mich. 698, 199 N.W.2d 169 (1972).
>
> .     .     .     .     .
>
> ... [However,] Harris is not subject to liability that flows from the employer ..., but rather is subject to potential liability flowing from its predecessor corporation ... under the theory of "continuity of enterprise" as set out in *Turner v. Bituminous Casualty Co.*, 397 Mich. 406; 244 N.W.2d 873 (1976). *Turner* held that products liability may attach to a corporation which acquires the assets of a manufacturer of a product for cash where the totality of the acquisition transaction demonstrates a basic continuity of the enterprise between the seller and the buyer.... In effect it is estopped from denying that it is not that company for the purpose of determining products liability. *Id.* at 426 [244 N.W.2d 873].
>
> Since Harris stands in the place of the manufacturer ... the only way that it would be held liable is to show that the manufacturer was actively negligent. [Citations omitted.] If active negligence is shown then one of the essential prerequisites of indemnity, being without personal fault, is not legally present.... If active negligence is not shown, then Harris would have a complete defense to any liability, rather than a basis for a third-party complaint for indemnification

against [the employer]. *Diekevers v. SCM Corp.*, 73 Mich.App. 78, 81; 250 N.W.2d 548 (1976).

*Langley v. Harris Corporation, supra.* The *Langley* court continued by emphasizing that common law indemnity hinges on the proof of a special relationship between the potential indemnitor and the party seeking indemnification. It is only when such a special relationship is shown that the right to common law indemnity is conferred. *See Gulick v. Kentucky Fried Chicken Mfg. Co.*, 73 Mich.App. 746, 252 N.W.2d 540 (1977) (an action for indemnity held to be proper where it was foreseeable that a doctor may negligently treat the plaintiff's original injury, thereby causing further damage when the conduct of other persons inflicted additional harm, such conduct resulting in the intermediaries becoming vicariously liable for the negligence of the doctor). *See generally* 41 Am.Jur.2d *Indemnity*, §§ 19–22, 25 (1968). The *Langley* court concluded by saying:

> While we recognize that Harris has committed no wrong, the Supreme Court has held as a matter of policy that a successor corporation should bear the burden of product liability cases even though the corporation is without fault. *In short, because the original plaintiff's complaint does not allege that the liability of Harris is in some manner derived from [the employer], it is inappropriate to consider indemnification an available avenue of relief.*

*Langley v. Harris Corporation, supra* (emphasis supplied). This Court believes that the *Diekevers, Langley,* and *Nanasi* decisions control Die Casters's third-party action against Du-Wel, and this Court must agree with Du-Wel that it is inappropriate to consider indemnity as a remedy available to Die Casters where the plaintiff's complaint does not allege any grounds upon which Die Casters's liability, if any, would be vicarious and in some manner would derive from Du-Wel's acts or omissions.

In *Diekevers v. SCM Corp., supra*, an employee was injured while operating a grinding machine. The employer paid the

appropriate worker's compensation benefits, but was brought in as a third-party defendant to an action initiated by the employee against the manufacturer of the grinding machine. After observing that common law indemnity would be available against an employer named by the principal defendant as a third-party defendant in an action initiated by the employee only where there exists a written or implied agreement to indemnify or a relationship between the principal defendant and the employer so as to create a vicariousness of liability, the court said:

> The common thread running through the *Dale, McLouth* and *Nanasi* cases is the existence of a special relationship between the primary defendant and the third-party defendant—whether a contractual relationship or a fact situation to impose a vicarious liability—that permits the primary defendant to be held liable for injuries proximately caused by the negligence of the latter. Our question thus effectively reduces to a determination of whether or not the primary complaint claims recovery under an allegation or inference of such a "special relationship" so as to give rise to the right of indemnification; if so, the summary judgments were improvidently granted.

*Diekevers v. SCM Corp., supra,* 73 Mich. App. at 80–81, 250 N.W.2d 548. The *Diekevers* Court then reviewed the action and determined that the third-party plaintiff's complaint against the employer asserted only freedom from active and causal negligence, but did not plead any special relationship between itself and the employer or any other grounds to establish the requisite vicariousness of liability.

In *Nanasi v. General Motors Corp., supra,* the court denied a third-party defendant's motion for summary judgment where the third-party plaintiff had asserted the right to common law and contractual indemnity even though the employer had carried worker's compensation insurance and had paid worker's compensation benefits to the employee. However, unlike *Diekevers,* the *Nanasi* court held that the requisite vicariousness of liability was alleged by the third-party plaintiff against the employer where the relationship between the two parties was that of owner and general contractor and where the owner's third-party action against the employer-general contractor was based on the employer's having conducted "inherently dangerous activities." Since the third-party plaintiff in the *Nanasi* court also alleged freedom from fault, the court found that summary judgment would be improper since the basis for indemnity action against the employer had been alleged.

In the case before this Court, however, Die Casters has failed to demonstrate the basis for its allegation that it is entitled to indemnity. Die Casters does not claim the existence of any express or implied agreement to indemnify, so its action for indemnity against Du-Wel must be based on the existence of a special relationship between the parties which has given rise to a vicariousness of liability as between themselves. Die Casters has not charged Du-Wel with liability for Die Casters's being a party over whom Du-Wel had control or for whose acts or knowledge Du-Wel was responsible. If Du-Wel were such a party, and if Die Casters's allegations were true (i. e., that Du-Wel caused Mr. McPike's death by rewiring the die casting machine), and if Die Casters were without active fault, then Die Casters would be able to claim indemnity. In such a case, Die Casters would only be vicariously liable. Instead, Die Casters has alleged only that its acts constituted mere passive negligence and Du-Wel's acts constituted active negligence. However, even when seeking this form of common law or equitable indemnification, Die Casters must show that it is entirely without fault *and* that it would be held liable only because of its vicarious relationship with Du-Wel. Typical applications of this theory may include master-servant, contractor-subcontractor, principal-agent, and liability under automobile owner's liability statutes. But the only relationship which Die Casters possibly could argue before this Court is one of purchaser-manufacturer. Although a *manufacturer-purchaser* relationship under ap-

propriate circumstances may give rise to the requisite vicariousness of liability,[6] this Court is aware of no Michigan authority establishing *purchaser-manufacturer* as such a special relationship for common law indemnity purposes.[7] In the absence of such a special relationship, the requisite vicariousness of liability cannot exist and, accordingly, no action for common law indemnity may be maintained.

The treatment of the indemnity issue in *Venters* is distinguishable from the case before this Court for the same reasons that *Nanasi v. General Motors Corp., supra,* is distinguishable from this case. In *Venters,* the plaintiff was an employee of a third-party defendant-general contractor who had been retained by the principal defendant to perform some work on subsurface natural gas lines in Benton Harbor, Michigan. Plaintiff was injured when a gas explosion occurred while he was working on the gas lines in a manhole. On these facts, Judge Hillman held that the principal party-defendant, as owner of the gas lines, could maintain an action for indemnity against the injured employee's employer even though the employer had paid the employee all benefits allowed under the Worker's Disability Compensation Act. Accordingly, *Venters* is merely an application of *Nanasi,* but both cases are distinguishable from the case at bar for the reasons already listed above.

## III. CONCLUSION

For all of the foregoing reasons,[8] Du-Wel's motion for summary judgment is

---

**6.** *See* 41 Am.Jur.2d *Indemnity,* § 25 (1968 and Supp.1980) (collecting cases).

**7.** The rationale behind not allowing a purchaser-manufacturer relationship to give rise to a "special relationship" for common law indemnity purposes is clear. A manufacturer normally has little control over what course his products will follow in the stream of commerce. He cannot choose the ultimate user and cannot supervise his product's use to make sure that safety precautions are followed. For these reasons:

> The only basis for a manufacturer's liability is therefore his own breach of a duty by doing or omitting to do something, while the product is within his control. While it is true that the user of the product may also incur liability for injuries resulting to third parties from his negligence in using it, and that such negligent use may concur with the negligence of the manufacturer in causing a single injury, the liabilities of manufacturer and user are separate and distinct.

*Prosky v. National Acme Company,* 404 F.Supp. 852, 855, n. 1 (E.D.Mich.1975). The duties owed by a manufacturer (arguably Die Casters in this case) and an employer (Du-Wel) are distinct from one another in a similar fashion. Manufacturers owe duties not to introduce defective products to the stream of commerce. Employers, on the other hand, owe duties not to allow employees to operate dangerous machinery without adequate supervision, maintenance, instruction, and precautions. But these duties are owed by the manufacturer and employer *independently* and *respectively,* and not as a result of a manufacturer's special or vicarious relationship with an employer.

Die Casters's liability to the plaintiff in this case will hinge on whether or not it allowed a defective die casting machine to enter the stream of commerce. Its liability will not be based on whether or not Du-Wel, as Mr. McPike's employer, breached its duties to supervise and maintain its machinery, or to instruct and give precautions to its employees so as to ensure its proper use. The possible bases of liability of these two parties run independently of one another. If Die Casters allowed a defective die casting machine to enter the stream of commerce, it is liable. The only question which would remain would be whether Die Casters would be entitled to charge back to Du-Wel or any other party all or any part of the award for the plaintiff. However, for the reasons already highlighted in the body of this opinion, Die Casters cannot seek contribution from Du-Wel because Section 131 of the Worker's Disability Compensation Act precludes this remedy; and Die Casters cannot seek common law indemnity since it has not shown a basis for ascribing a vicarious relationship between itself and Du-Wel and since the adoption of the doctrine of pure comparative negligence through *Placek* did not affect the law of Michigan regarding indemnity. Thus, Die Casters may not seek relief from Du-Wel either in the form of contribution or indemnity.

**8.** This Court has given careful consideration to the problem of balancing the policy goals underlying the Court's seeking to avoid giving any party to this litigation the benefit of any windfall *vis-à-vis* the policy dictates contained in the Worker's Disability Compensation Act itself. M.C.L.A. § 418.827(5), M.S.A. § 17.237(827)(5), provides:

> In an action to enforce the liability of a third party, the plaintiff may recover any amount

hereby granted and Die Casters's third-party complaint against Du-Wel is dismissed.

IT IS SO ORDERED.

which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

Accordingly, the worker's compensation statute itself guides this Court in resolving this concern. Although Die Casters has alluded to a potential windfall to Du-Wel in the event Die Casters would not be able to seek indemnity or contribution from Du-Wel, the statute clearly allows Du-Wel to receive such a so-called "windfall." But Du-Wel would not "benefit" from this statutory provision if Die Casters were not independently responsible in some way for the death of Mr. McPike. If negligence is the theory on which Die Casters is found liable, then Die Casters will be responsible to the plaintiff for only that part of the loss for which it is responsible, and nothing more. If Die Casters is liable to the plaintiff on any other theory of recovery, then conceivably it may be responsible for all of the plaintiff's losses, unless all or part of those losses can be deflected to the new third-party defendant, Koehring Company.

There are sound policy reasons for allowing employers this right of subrogation to any claims successfully waged by employees or their personal representatives against third parties. Although this Court does not consider Du-Wel's potential right of subrogation a potential "windfall," the simple fact is that if the operation of M.C.L.A. § 418.827(5), M.S.A. § 17.237(827)(5) allows Du-Wel to recover a "windfall" in this case, then the legislature must want that result in worker's compensation—products liability actions. In the absence of any constitutional basis for altering the statute's policy, this Court must resolve this case—even in light of this right of subrogation—in a manner consistent with the intent of the Michigan legislature. Whether or not this statute should be modified to account for this result is a question to be raised before and addressed by the Michigan legislature and not this Court.