STEVENS v. JACKSON.

1. FRAUDS, STATUTE OF—REAL PROPERTY—CONTRACTS.
   An oral agreement between four persons who were interested in an estate of a decedent, and who entered into a written contract to buy the dower and homestead rights of the widow, that one of the four should pay $500 and one-fourth of the amount to be given the widow, was not void under the statute of frauds.

2. SAME—PRESUMPTIONS.
   At most only a presumption existed that the purchasers had equal interests and the presumption was rebuttable.

3. SAME—CONSIDERATION.
   Under conflicting testimony relating to the oral agreement, the issue was one for the jury and there was sufficient evidence of consideration to support the contract.
   MCALVAY, C. J., dissenting.

Error to Allegan; Cross, J. Submitted November 13, 1913. (Docket No. 120.) Decided April 7, 1914.

Assumpsit by Carlotta Stevens and others against Charles Jackson for money due, etc. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Charles R. Wilkes,* for appellant.

*Clare E. Hoffman,* for appellees.

McALVAY, C. J. *(dissenting).* Plaintiffs brought suit, in an action of assumpsit, against defendant to recover the sum of $500, which they claim he by oral agreement promised to pay them. This suit resulted in a verdict and judgment for plaintiffs. The case is brought here for review upon a writ of error by defendant. In order to have any understanding of this suit and the relations of these parties to each other in the transaction out of which it arose, it will be necessary to make a statement of the facts.

All of the parties to this suit are the sole heirs at law of William Jackson, who died testate June 21, 1910. Besides these children, there survived him a widow, who was their stepmother, and who elected to take her statutory dower and homestead rights in his real estate as his widow. In 1905 William Jackson had conveyed to defendant Charles Jackson, his son, by warranty deed, 40 acres of land in Monterey township, Allegan county, Mich., known as the "wood lot," for the cash consideration of $2,500. His wife, Lucy Jackson, refused to join in the deed, and it was provided therein that the conveyance was made subject to her dower rights. At the time of his death, William Jackson owned real estate consisting of a farm of 102 acres in Monterey township and a house and lot occupied by him as his homestead in Hopkins village, Allegan county. The farm was appraised at $9,000 and the homestead at $1,800. The widow claimed dower rights in the farm, in the 40 acres deeded to defendant, and homestead rights in the house and lot at Hopkins. The total valuation of the three parcels was between $12,000 and $13,000.

On August 21, 1910, the four heirs of William Jackson and his widow met at the probate office at Allegan,

and made a settlement, and entered into an agreement in writing whereby these heirs purchased all of the dower and homestead rights of the widow in these three parcels of land. The material portions of this agreement read as follows:

"This agreement entered into this 22d day of August, 1910, by and between Lucy M. Jackson, party of the first part, and Charles S. Jackson, Minnie Opperman, Carlotta Stevens and Mary B. Knoblock, heirs at law of William Jackson, deceased, and devisees under his will, parties of the second part: Said party of the first part for and in consideration of the covenant herein undertaken by second parties doth hereby release unto said second parties all her right, title and interest in and to the estate of William Jackson, deceased, either under the will of said William Jackson, deceased, or under the statute as his widow and does hereby convey to said parties of the second part all her interest in and to the following described real estate, to wit, [giving description of premises], as dower homestead rights, or otherwise. To have and to hold the same forever. * * * [Omitting the agreement on the part of the heirs to sell and set over to the widow the household furniture and certain personal property and to lease the homestead to her for five years.] Second parties further agree to pay to the first party the sum of eighteen hundred (1,800) dollars on or before the first day of June, 1911, with interest at five per cent. after due. * * * "

This instrument was duly executed, witnessed, and acknowledged by all the parties. Its terms and conditions were in all respects performed. The four heirs of William Jackson borrowed from the Hopkins State Bank the sum of $1,800, giving their joint and several promissory note for that amount, and they later paid said note out of the proceeds from the sale of said farm; each paying one-fourth of said $1,800. The foregoing statement of facts is undisputed.

The dispute in this suit arises out of the claim made by the three plaintiffs that on the same day, and shortly before the dower and homestead rights of

the widow, Lucy Jackson, were sold and conveyed by
her to the four children equally, as appears from the
writing above referred to, a verbal agreement was
entered into by which it is claimed Charles Jackson,
defendant, agreed to pay, for the release of the dower
interest in his 40 acres, $500 of the purchase price of
$1,800 and one-fourth of the balance of $1,300. De-
fendant, Charles Jackson, denied that he made any
verbal agreement with the plaintiffs or any of them.
The court, over objections of counsel for defendant,
allowed plaintiffs to testify at length relative to this
agreement.

At the close of plaintiffs' case, a motion was made
by counsel for defendant for a directed verdict, upon
several grounds, viz.: Because the claimed verbal
agreement tended to contradict the written instrument
which later all parties entered into; because the verbal
agreement was within the statute of frauds relating
to the sale of an interest in lands; because it was with-
out consideration; because there was a misjoinder of
plaintiffs; the action arising upon the agreement
claimed to have been made was several and not joint.
This motion was denied by the court, and an excep-
tion taken. The trial of the cause proceeded, and the
case was submitted to the jury upon the charge of the
court.

The errors assigned and relied upon relate to the
refusal of the court to grant the motion for a directed
verdict in favor of defendant; to the admission of cer-
tain testimony; to the refusal to give certain requests
to charge; and upon certain portions of the charge as
given. The most important contention on the part
of appellant is that raised, among others, as a ground
for an instructed verdict, namely, that this verbal
agreement related to a sale of an interest in lands and
was within the statute of frauds requiring such agree-
ments to be in writing. At the time of making this

verbal agreement, these parties were about to, and did later on the same day, acquire by purchase all of the dower and homestead interests of their stepmother in all of the real estate of their ancestor in which she was interested. By this claimed agreement defendant was to pay $500 for the widow's dower interest in the 40 acres he had purchased from his father, and each was to pay a one-fourth of the balance of $1,300, and plaintiffs testified that they were not purchasing, and did not know until after the commencement of this suit, that they had purchased any interest from the widow in defendant's land. Each of the plaintiffs testified that, after this suit was begun, she executed and tendered to defendant a quitclaim deed of all interest in the 40 of defendant. This agreement, if made, was in contemplation of a settlement with the widow and a transfer of all her interest in this property to these parties which was made later on the same day, and which conveyed to each one of them a one-fourth of the widow's interest in all of this real estate, including defendant's 40 acres, for which each paid one-fourth of the purchase price agreed upon. That each received an interest in lands by this conveyance is not disputed, but it is contended that the agreement upon which suit was brought was not between the parties to the conveyance but only among purchasers. That agreement, however, contemplated acquiring an interest in real estate by defendant, and what was done in furtherance of it will be presumed to have been intended; and, having each acquired a quarter interest in all the widow's dower and homestead rights in all the real estate, it will be presumed that they contemplated the only possible means whereby defendant could acquire the dower interest in his land, which would be by transfer to him from each plaintiff of her interest therein.

We do not find in these facts any performance which would satisfy the statute, and therefore must conclude that the verbal agreement was within the statute of frauds and void. The court should have directed a verdict in favor of defendant upon that ground. It will not be necessary to consider other questions presented.

The judgment of the circuit court should be reversed, and, as this conclusion would dispose of the entire case, a judgment should be entered in this court in favor of defendant and against plaintiffs.

STONE, J. I am unable to agree with the result reached by Justice McALVAY in this case. In my opinion the contract set forth in the special count of the declaration, as well as the one claimed under the common counts, and testified to by the plaintiffs, was a valid oral contract, and it did not in any manner alter, contradict, or vary the terms of the written agreement by which the parties, both plaintiffs and defendant, purchased from Lucy M. Jackson her interest in and to the estate of William Jackson, deceased, "either under the will of said William Jackson, deceased, or under the statute as his widow," and whereby she conveyed her interest to the parties to this suit. The agreement sued upon in no way affected the agreement of purchase from the widow, but was one whereby the plaintiffs and defendant agreed how the purchase money should be paid, as between themselves. It is the claim of the plaintiffs that, in consideration of their agreement to pay a portion of said purchase money, the defendant agreed that, of the $1,800 to be paid, he would first pay $500 of said sum, in consideration of his interest in the 40 acres (he having before purchased the same from William Jackson, subject to the dower interest of Lucy M. Jackson), and further that he would pay one-quarter of the remainder of $1,300; that he failed

to do this, and only paid one-quarter of the whole sum of $1,800; and that, he having failed to pay as he agreed to do, he is indebted to them in the sum of $375, which they jointly had paid for him, as joint makers of the note.

In my opinion the agreement claimed by the plaintiffs was not within the statute of frauds, and did not relate to a transfer of an interest in lands, within the meaning of that statute. The conveyance of lands was made by a third party to the parties to this suit, and we are here dealing with a claimed contract between the latter as to how the purchase money should be paid, and the portion to be paid by each.

At most there was a mere presumption that the interest of each purchaser was equal, and that presumption was rebuttable. *Campau* v. *Campau*, 44 Mich. 31 (5 N. W. 1062); 38 Cyc. p. 74. As tending to show the interest of each, it would be competent to show the amount of purchase money paid by each. This would not infringe or contravene the statute of frauds.

Here a question of fact was presented as to the amount each of the parties agreed to contribute of the purchase money. The plaintiffs claim that, by reason of his interest in the property, the defendant agreed to pay $825 of the $1,800. This he did not do. They, having jointly paid for him, and for his use and benefit, $375 of that sum, seek by this action to recover it back. It would seem that there was a sufficient consideration for such promise, if made, and that such contract was made jointly with the plaintiffs. In my opinion a question of fact only was involved, and it was properly submitted to the jury.

The record showing no reversible error, the judgment of the circuit court should be affirmed.

BROOKE, KUHN, OSTRANDER, BIRD, and STEERE, JJ., concurred with STONE, J. MOORE, J., did not sit.