GARCIA v McCORD GASKET CORPORATION

Docket No. 145091. Submitted November 17, 1992, at Lansing. Decided October 4, 1993, at 9:50 A.M. Leave to appeal sought.

Plaintiff, Mary Garcia, was awarded workers' compensation benefits from defendants, McCord Gasket Corporation and its insurer, Union Fire Insurance Company, when a magistrate found her to be totally disabled. The order provided that the benefits were to be paid until further order of the bureau and that the defendants "shall be responsible for medical expenses pursuant to [MCL 418.315; MSA 17.237(315)] as follows: Any and all reasonable and necessary medical expenses related to plaintiff's back et sequelae." The defendants filed an application for review of the claim by the Workers' Compensation Appellate Commission, and the plaintiff filed a cross appeal. Numerous disputes relating to the reasonableness and necessity of various medical treatments followed. The defendants filed a petition to stop benefits and an application for mediation or a hearing. The plaintiff filed a motion to dismiss the appeal of the defendants, alleging that they had refused and denied payment of medical benefits required by the terms of the award of the magistrate and that such refusal was contrary to the provisions of MCL 418.862; MSA 17.237(862). The defendants responded that they had paid for reasonable and necessary medical benefits but had denied payment of requests for medical benefits that were not reasonable or necessary. The commission denied the plaintiff's motion to dismiss on the basis that the defendants erroneously may have believed that the notice of dispute filed after the magistrate's decision relieved them of their obligation under MCL 418.862(2); MSA 17.237(862)(2). The commission gave the defendants thirty days within which to provide an affirmation of the bills that had been received, the date the medical services were provided, and a showing that the bills had been paid pursuant to the magistrate's order awarding reasonable and necessary medical expenses related to plaintiff's back. Failure to provide timely compliance with MCL

REFERENCES
Am Jur 2d, Workers' Compensation §§ 686, 687.
See ALR Index under Workers' Compensation.

418.862(2); MSA 17.237(862)(2) would subject defendants' appeal to dismissal. The defendants filed a motion to remand and consolidate the proceedings or hold them in abeyance, noting that a hearing regarding their objections to the reasonableness and necessity of the medical expenses was scheduled to occur in less than two weeks. The commission denied the defendants' motion and granted the plaintiff's motion to dismiss. The defendants appealed by leave granted.

The Court of Appeals *held:*

The Workers' Compensation Appellate Commission has the implied authority to dismiss appeals for noncompliance with MCL 418.862(2); MSA 17.237(862)(2). The defendants' filing of a claim for review did not operate as a stay with regard to their obligation to provide the medical benefits required by the terms of the magistrate's award. The defendants should have paid the disputed bills, or the maximum amount allowed under the Workers' Compensation Health Care Services Rules, 1989 AACS, R 418.1901 *et seq.,* if that amount was less, and then proceeded with an expedited hearing as provided in R 418.1904(3) and (6).

Affirmed.

TAYLOR, P.J., dissenting, stated that for dismissal to be appropriate, there must be prerequisite noncompliance with the requirements of MCL 418.862(2); MSA 17.237(862)(2). The magistrate's order in this case is not sufficiently clear to make apparent what medical expenses are required to be paid pursuant to the requirements of § 862(2). The decision of the appellate commission should be reversed and the matter remanded to the commission for determination of the appeal on the merits, or to permit further remand to the magistrate for clarification of the order, for joinder with the defendants' timely demanded hearing under MCL 418.847; MSA 17.237(847) concerning the propriety of the challenged health care services, for consolidation with any appeal from the magistrate's decision following that hearing, or for decision in light of any unappealed findings made at such hearing.

WORKERS' COMPENSATION — APPELLATE COMMISSION — CLAIMS FOR
    REVIEW — MEDICAL BENEFITS.

The Workers' Compensation Appellate Commission may dismiss an employer's appeal from a magistrate's award of medical benefits where the employer has filed a claim for review regarding the award and has paid some of the benefits, but has disputed and not paid others; the filing of a claim for review does not operate as a stay with regard to the obligation to

provide the medical benefits required by the terms of the award (MCL 418.862[2]; MSA 17.237[862][2]).

*Richard B. Jenks (Daryl Royal,* of Counsel), for the plaintiff.

*Evans, Pletkovic, Hays & Rhodes, P.C.* (by *John J. Hays),* for the defendants.

Before: TAYLOR, P.J., and SHEPHERD and MARILYN KELLY, JJ.

SHEPHERD, J. The plaintiff's employer, McCord Gasket Corporation, and its insurance carrier, National Union Fire Insurance Company, appeal by leave granted from an August 30, 1991, order of the Workers' Compensation Appellate Commission, which, in a divided decision, granted plaintiff's renewed motion to dismiss appellants' appeal "for failure to comply with MCL 418.862(2) [MSA 17.237(862)(2)] and the June 20, 1991 order of this Commission." That order also denied appellants' motion for remand and consolidation, or to hold proceedings in abeyance.

At issue is whether the appellate commission can dismiss an appeal for failure to provide medical benefits pursuant to MCL 418.862(2); MSA 17.237(862)(2), as amended effective July 30, 1985, where the appellants have answered and shown payment of some bills during the appeal period, but have disputed others. It was the appellate commission's position that failure to provide timely compliance with § 862(2), even though a notice of dispute had been filed, subjected appellants' appeal to dismissal.

In a corrected decision mailed on January 25, 1990, the magistrate found plaintiff totally disabled and entitled to workers' compensation benefits until further order of the bureau. It was fur-

ther ordered that the appellants "shall be responsible for medical expenses pursuant to [MCL 418.315; MSA 17.237(315)] as follows: Any and all reasonable and necessary medical expenses related to plaintiff's back et sequelae."

On February 9, 1990, an application for review of the claim was filed by defendant employer and its carrier. Later, a cross appeal was filed by plaintiff.

Numerous disputes relating to the reasonableness and necessity of various medical treatments followed. On January 9, 1991, appellants filed a petition to stop benefits and an application for mediation or hearing (Form C). The petition stated a March 18, 1987, date of injury.

On February 6, 1991, plaintiff filed a motion to dismiss the appellants' appeal, alleging that appellants had refused and denied payment of medical benefits required by the terms of the award of the magistrate and contrary to the provisions of § 862. The motion conceded that appellants had made their seventy percent payments as required by MCL 418.862(1); MSA 17.237(862)(1).

On February 26, 1991, appellants filed their answer to the motion to dismiss their appeal. In it they asked to have the motion denied, contending that they had considered

> all requests for payment of medical benefits and have paid those which were reasonable and necessary in accordance with Magistrate Godfrey's decision and have denied payment on other requests which are not reasonable or necessary in accordance with the Act. Magistrate Godfrey gave no guidance in his decision as to which medical providers and care and treatment was necessary or which amount was reasonable. Defendants-appellants have consulted with the State of Michigan Workers' Compensation Health Care Service Rules

where applicable as well as independent medical evaluations and opinions as to the necessity of ongoing medical treatment.

Later, appellants filed a second application for mediation or hearing that specifically objected to any further treatment by Dr. Velez-Ruiz.

On June 20, 1991, the appellate commission issued its order denying plaintiff's initial motion to dismiss appellants' appeal, and stated that it was "concerned that defendants may erroneously believe that the Notice of Dispute filed subsequent to the magistrate's decision relieves them of their obligation under MCL 418.862(2) [MSA 17.237(862) (2)]." The order specifically gave appellants thirty days within which to provide the commission "an affirmation of the bills that had been received, the date the medical services were provided, and a showing that the bills had been paid pursuant to the magistrate's order of January 22, 1989, awarding reasonable and necessary medical expenses related to plaintiff's back. Failure to provide timely compliance with MCL 418.862(2) [MSA 17.237(862)(2)] shall subject defendants' appeal to dismissal."

On July 18, 1991, appellants filed a motion to remand and consolidate or hold in abeyance, because trial on appellants' application for hearing filed in February 1991, objecting to the reasonableness and necessity of the medical expenses being claimed by plaintiff under the magistrate's award, was scheduled for July 31, 1991, less than two weeks from that date. It was appellants' position that they were following the Workers' Compensation Health Care Services Rules that became effective in 1989, and that specifically covered the process for resolving disputes between carriers and health care providers, and that, therefore, their

appeal was not subject to dismissal by the appellate commission. Appellants noted that their application would be treated the same as a sixty-day case under the expedited treatment provided for under the rules. Further, appellants said that it would be more economical and efficient if the appellate commission would either remand or hold in abeyance while the parties fully developed the record relating to the dispute.

Plaintiff filed an answer on July 25, 1991, contending that appellants were in violation of the Workers' Disability Compensation Act as a result of their refusal to pay plaintiff's medical bills.

As indicated above, on August 30, 1991, the commission granted plaintiff's renewed motion to dismiss and denied appellants' motion for remand and consolidation or to hold the proceedings in abeyance. The dissenting commissioner voted to deny appellants' motion for remand and consolidation or to hold the proceedings in abeyance, and also voted to deny plaintiff's renewed motion for dismissal of appellants' appeal.

While MCL 418.862(2); MSA 17.237(862)(2) states that medical benefits shall be provided from the date of the award and shall continue until final determination of the appeal or for a shorter period if specified in the award, it does not contain any penalty provision. Further, the monetary penalties provided in MCL 418.801(3); MSA 17.237(801)(3) for failure to provide medical benefits do not apply in this case where there is an ongoing dispute. Nevertheless, this Court holds that the appellate commission does have the implied authority to dismiss appeals for noncompliance with MCL 418.862(2); MSA 17.237(862)(2). See *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977). Moreover, to the extent that *Perry v Sturdevant Mfg Co,* 124 Mich App 11; 333 NW2d 366 (1983),

may be read as inconsistent with this decision, we decline to follow it.

MCL 418.862(2); MSA 17.237(862)(2) states that the filing of a claim for review shall not operate as a stay with regard to the providing of medical benefits required by the terms of the award, and that, if the benefit amount is reduced or rescinded by a final determination, the carrier shall be reimbursed from the general fund of the state for the amount of the expenses incurred in providing the medical benefits pending the appeal in excess of the amount finally determined.

1989 AACS, R 408.32a, (Rule 2a), effective November 4, 1989, provides that reimbursements for payments made in accordance with the provisions of § 862(2) shall be made from the medical benefit fund. To be reimbursed from that fund, medical benefits must have been required by the terms of an award and paid in accordance with MCL 418.315; MSA 17.237(315) and the rules published pursuant to that section.

Rule 2a (4) and (5) requires applications for reimbursement from the medical benefit fund to be made not less than thirty days after the benefit amount is reduced or rescinded by a final determination, and that reimbursement from the medical benefit fund shall be consistent with benefits awarded in the magistrate's decision. Further, reimbursement will only be made for medical benefits that were provided between the bureau's mailing date of the magistrate's award and the date of the final determination of the appeal, or for a shorter period as specified in the award.

Rule 2a(9) authorizes the medical benefit fund to determine if all or part of the request for reimbursement is not proper, and to so notify the carrier in writing. If the carrier disputes that

determination, it may file an application for mediation or a hearing.

The rules adopted pursuant to § 315, *supra,* are known as the Workers' Compensation Health Care Services Rules, and they became effective June 28, 1989. Part 19 thereof, being 1989 AACS, R 418.1901 (Rule 1901) *et seq.,* sets forth the process for resolving differences between carriers and providers regarding medical bills.

R 418.1904 (Rule 1904) specifically addresses "Disputes" and reads in pertinent part:

> Rule 1904. (1) When a carrier disputes a bill or portion thereof pursuant to these rules, *a notice given pursuant to R 418.1901(1) creates an ongoing dispute for the purpose of section 801 of the act.* The time for making payment of a bill under section 801 of the act shall not run unless the bill is properly submitted according to applicable rules and statutes.

> (2) Any dispute concerning the medical appropriateness of health care or a health care service, utilization of health care or a health care service, the need for health care or a health care service, and any dispute over the cost of health care or a health care service shall be resolved as if it were an application for mediation or hearing filed under section 847 of the act [MCL 418.847; MSA 17.237(847)].

> (3) Where the dispute results in the denial of medical treatment for a worker, or where there is a petition by an employer to stop its liability for medical benefits previously ordered, *including proceedings under subrule (6) of this rule,* it shall receive the same expedited treatment accorded to 60-day cases under section 205 of the act [MCL 418.205; MSA 17.237(205)], except the bureau may refer the matter to mediation under section 223 of the act [MCL 418.223; MSA 17.237(223)].

> *     *     *

> (6) *If a carrier is required by the terms of an*

*award to provide medical benefits, the carrier shall
continue to provide those benefits, until there is a
different order by a magistrate, the appellate com-
mission, the court of appeals, or the supreme
court. This subrule shall not preclude the use of
the maximum allowable payments provided by
these rules for the payment of bills by carriers.*
When a carrier files an application to stop or limit
its liability under this subrule, it shall receive the
expedited treatment provided for under subrule (3)
of this rule. [Emphasis added.]

It is apparent that appellants did not comply
with the applicable law. When they refused to pay
the medical bills as required, both by the magis-
trate's order and the appellate commission's order,
they subjected themselves to the possibility of a
dismissal as stated in the commission's order.
What appellants should have done with the dis-
puted medical bills was to pay them, or the maxi-
mum allowed under the rules if that amount was
less, and then proceed with an expedited hearing
as provided in Rule 1904(3) and (6), *supra.*

Affirmed. Costs to plaintiff.

MARILYN KELLY, J., concurred.

TAYLOR, P.J. *(dissenting).* Appellants, employer
McCord Gasket Corporation and insurance carrier
National Union Fire Insurance Company, appeal
by leave granted an August 30, 1991, order of the
Workers' Compensation Appellate Commission dis-
missing their appeal

for failure to comply with MCL 418.862(2) [MSA
17.237(862)(2)] and the June 20, 1991 order of this
Commission.

The referenced June 20, 1991, order of the ap-
pellate commission was issued in response to plain-

tiff's first motion to dismiss. That motion had been brought because of appellants' failure to pay medical bills. The defense to the motion was that the magistrate's earlier opinion directing the payment of "[a]ny and all reasonable and necessary medical expenses related to plaintiff's back et sequelae" gave appellants cause to believe that the presented bills should be challenged with regard to reasonableness and necessity. In any event, the June 20, 1991, WCAC order gave appellants thirty days within which to provide the commission

> an affirmation of the [medical] bills that have been received, the date the medical services were provided, and a showing that the bills have been paid pursuant to the magistrate's order of January 22, 1989, awarding reasonable and necessary medical expenses related to plaintiff's back. Failure to provide [evidence of] timely compliance with MCL 418.862(2) [MSA 17.237(862)(2)] shall subject defendants' appeal to dismissal.

The June 20, 1991, order, being interlocutory, was not appealable at the time. *East Jordan Iron Works v Workers' Compensation Appeal Bd,* 124 Mich App 324; 335 NW2d 23 (1983).

My colleagues take the view that appellants, although timely challenging the reasonableness and necessity of the medical bills, failed to do so in accordance with 1989 AACS, R 418.1904 Rule 1904. They conclude that dismissal is an appropriate administrative sanction.

If the only question properly before us were whether the appellate commission, under its implied power to enforce § 862(2) of the Workers' Disability Compensation Act regarding payment of magistrate-ordered medical benefits for injured workers, could properly dismiss appeals by employers or insurance carriers who ignore these obliga-

tions, I would join in my colleagues' opinion. I share the view that merely because the Legislature has authorized penalties does not preclude dismissal in lieu of or in addition to a penalty in the discretion of the appellate commission. *Perry v Sturdevant Mfg Co,* 124 Mich App 11; 333 NW2d 366 (1983).

I believe that under *Perry* for dismissal to be appropriate, there must be prerequisite noncompliance with the requirements of § 862(2). To be noted is that this provision was added to the Workers' Disability Compensation Act by 1985 PA 103. We are called upon, in this case, to construe and apply the section for the first time. Section 862(2) provides:

> A claim for review filed pursuant to section 859a or 864(11) of a case for which an application under section 847 is filed after March 31, 1986 shall not operate as a stay of providing medical benefits required by the terms of the award. Medical benefits shall be provided as of the date of the award and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the award shall be withheld until final determination of the appeal. If the benefit amount is reduced or rescinded by a final determination, the carrier shall be reimbursed for [the] amount of the expenses incurred in providing the medical benefits pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the general fund of the state. If the award is affirmed by a final determination, the carrier shall provide all medical benefits which have become due under the provisions of the award, less any benefits already provided for. Interest shall not be paid on amounts paid pending final determination.

This statute is striking because for the first time

it puts the general fund of the state in the position of guaranteeing to insurance carriers and self-insureds reimbursement for medical benefits that, by final determination of the appellate commission (subject to judicial review), are found to be excessive ("reduced"), or wholly unwarranted ("rescinded"). Such a remarkable opportunity for invasion of the treasury, not suprisingly, was surrounded by statutory safeguards to prevent abuse. These guardian provisions can be found in MCL 418.315; MSA 17.237(315). Section 315, which was amended by 1985 PA 103, provides:

> (1) The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed. . . .
>
> (2) All fees and other charges for any treatment or attendance, service, devices, apparatus, or medicine under subsection (1), shall be subject to rules promulgated by the department of management and budget pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.328 of the Michigan Compiled Laws. The rules promulgated shall establish schedules of maximum charges for such treatment or attendance, service, devices, apparatus, or medicine, which schedule shall be annually revised. A health facility or health care provider shall be paid either its usual and customary charge for any of the above, or the maximum charge established under the rules, whichever is less. . . .
>
> *    *    *
>
> (4) If a carrier determines that a health facility or health care provider has made any excessive charges or required unjustified treatment, hospitalization, or visits, the health facility or health care provider shall not receive payment under this

chapter from the carrier for the excessive fees or unjustified treatment, hospitalization, or visits, and shall be liable to return to the carrier any such fees or charges already collected. The department of management and budget may review the records and medical bills of any health facility or health care provider determined by a carrier to not be in compliance with the schedule of charges or to be requiring unjustified treatment, hospitalization, or office visits.

(5) As used in this section, "utilization review" means the initial evaluation by a carrier of the appropriateness in terms of both the level and the quality of health care and health services provided an injured employee, based on medically accepted standards. This review shall be accomplished by a carrier pursuant to a system established by the department of management and budget which identifies the utilization of health care and health services above the usual range of utilization for such services based on medically accepted standards and provides for acquiring necessary records, medical bills, and other information concerning any health care or health services.

\* \* \*

(7) If it is determined by a carrier that a health facility or health care provider improperly overutilized or otherwise rendered or ordered inappropriate health care or health services, or that the cost of the care or services was inappropriate, the health facility or health care provider may appeal to the department of management and budget regarding that determination pursuant to procedures provided for under the system of utilization review.

(8) The criteria or standards established for the utilization review shall be established by rules promulgated by the department of management and budget. A carrier that complies with the criteria or standards as determined by the department of management and budget shall be certified by the department.

(9) If the health facility or health care provider

provides health care or a health service that is not
usually associated with, is longer in duration in
time than, is more frequent than, or extends over
a greater number of days than that health care or
service usually does with the diagnosis or condi-
tion for which the patient is being treated, the
health facility or health care provider may be
required by the carrier to explain the necessity or
indication for the reasons why in writing.

References in the above statute to the Depart-
ment of Management and Budget should now be
construed to refer to the Department of Labor,
Bureau of Workers' Disability Compensation, pur-
suant to Executive Reorganization Orders Nos
1986-3 and 1990-1, MCL 418.1, 418.2; MSA
17.237(1).

The important point that emerges from a read-
ing of § 315 is that workers' compensation insur-
ance carriers, including self-insureds, are man-
dated to monitor closely medical treatment for
injured workers with an eye to detecting both
charges in excess of the schedules of maximum
fees promulgated by the agency and any overutili-
zation. The carriers serve the policing function.
This becomes important to more than the carriers
when the state treasury, pursuant to the above-
cited § 862(2), is brought forward as the guarantor
of last resort when, despite a carrier's best efforts,
medical benefits that are unnecessary or over-
priced have been provided in accordance with a
magistrate's order that is later overturned.

Undergirding this whole process, however, is the
requirement that the magistrate's order be clear
enough to make apparent what medical expenses
are required. This is the problem in this case. The
magistrate's order is tautological and defies intelli-
gent implementation.

As the Supreme Court once described a similar unclear and ill-defined order:

> This so-called award means nothing to any of the parties. It finds that the plaintiff is still partially disabled and is entitled to compensation, but does not fix the amount that he is to receive or that defendants are to pay. It is not enforceable. It is not an award upon which a judgment could be entered in the circuit court. [*Thayer v Britz,* 234 Mich 645, 647; 209 NW 50 (1926).]

A like sentiment must be expressed about the magistrate's order in this case with regard to reimbursement of medical expenses. The magistrate's order means nothing to any of the parties; it merely recapitulates the statutory language that obligates the employer, in the case of a work-related injury, to pay reasonable and necessary medical expenses under § 315, albeit confining that obligation to plaintiff's back condition. The award does not indicate what particular medical treatment ought to be included, nor does it provide criteria from which it could reliably be determined by the appellants, either in advance or in retrospect, that a particular prognosticated treatment, prosthetic, or prophylactic is within the magistrate's concept of "reasonable and necessary" medical treatment related to plaintiff's back. No circuit court could enter judgment on the award under MCL 418.863; MSA 17.237(863), which ought to be the touchstone, pursuant to *Thayer, supra,* for evaluating a magistrate's award of medical benefits.

A workers' compensation award inherently determines the rights of the parties only with regard to the date the award is rendered, and cannot properly include speculative or predictive matters. *Sanford v Ryerson & Haynes, Inc,* 396 Mich 630,

634-635; 242 NW2d 393 (1976). It is thus always appropriate, as MCL 418.847; MSA 17.237(847), which is specifically incorporated in § 862(2), provides, for a carrier to file a petition to stop benefits on grounds that the employee's disability has terminated or ameliorated, whether or not an appeal of the award is pending. *Barham v Workers' Compensation Appeal Bd,* 184 Mich App 121; 457 NW2d 349 (1990).

If in this case the magistrate had awarded medical benefits in a properly specific form, enforceable by judgment, I would have no cause to disagree with my colleagues. But the majority opinion herein ignores this administrative obligation. The upshot is that, under the majority opinion, the insurance carrier must pay all medical bills that are facially related to any kind of treatment for plaintiff's back or arguably related conditions, which obligation is limited only by the maximum fee set by administrative regulation for any individual treatment, attendance, service, device, apparatus, or medicine. The question whether such treatment is necessary and reasonable, in duration or frequency, or whether it is truly related to plaintiff's compensable disability, is, according to the majority, at best an issue that arises, not between the employee and the insurance carrier, but among the insurance carrier, the medical service provider, and the general fund.

By this reasoning the carefully circumscribed occasions, with all the built-in preliminary carrier-policed protections, on which the general fund can be invaded under § 862(2) have been read out of the statute. This will then predictably create a situation, unless reversed, in which neither employees as a class, nor insurance carriers as a group, have any particular incentive under this construction of the act to challenge the necessity

for or charge—within limits fixed by regulation—
made for any medical service, because reimburse-
ment from the general fund is guaranteed. This
cannot have been the intent of the Legislature if it
were fiscally responsible and, in fact, that it wasn't
the legislative intent is made clear by the fact that
carriers are given the previously mentioned polic-
ing duties—duties which will now be abandoned.

The majority finds support for its position in
Rule 1904(6), but the obligation imposed by the
rule is in turn derivative, once again, being based
on the requirement imposed "by the terms of an
award to provide medical benefits." The rule, like
the statute, is written in general terms, but can
only be properly understood to apply to terms of a
magistrate's award to provide medical benefits
that are definite, where the requisite certainty is
measured by whether the award can be made
judicially enforceable under § 863. In short, the
rule was drafted with an understanding that it
would be interpreted in accord with *Thayer, supra,*
and *Sanford, supra,* and, indeed, seventy years of
unbroken workers' compensation jurisprudence.
Such limitations are not unique to Michigan work-
ers' compensation, but common to administrative
procedure generally. *Federal Trade Comm v Mor-
ton Salt Co,* 334 US 37; 68 S Ct 822; 92 L Ed 1196;
1 ALR2d 260 (1948).

To give the majority their due, had the magis-
trate's award in this case been sufficiently specific,
this regulation would no doubt warrant the sanc-
tion of dismissal of an appeal to the WCAC from
the magistrate's award, based on a determination
that appellants had failed to comply with the
award pending review. But, in the absence of such
an enforceable magistrate's award, there can be no
noncompliance, unless one is prepared to say that
the duly appointed administrative agency may

enter orders that direct employers and insurance carriers to "comply with the provisions of the statute" and, on penalty of failing to divine the parameters of such an award, the employer or carrier can be prevented from obtaining meaningful appellate review of the substance of the decision. This I am not willing to do. *Federal Trade Comm v Colgate-Palmolive Co,* 380 US 374, 394; 85 S Ct 1035; 13 L Ed 2d 904 (1965).

This also seems a proper occasion to put to rest the apparent assumption, of which the parties and perhaps the appellate commission have indulged, that, where the general fund has made reimbursement to the carrier under § 862(2), the matter ends. Michigan jurisprudence recognizes, within the common-law action of assumpsit, more modernly called "implied contract," the action for money paid. Such an action is a suit for obligations implied or imposed by law to repay money paid or expended by one person for the use or benefit of another who ought to have paid it to a third person, independent of any instrument in writing requesting such payment or promising repayment. *Curtis v Flint & P M R Co,* 32 Mich 291 (1875); *Stevens v Jackson,* 180 Mich 131; 146 NW 636 (1914). In many of these situations, an ordinary health insurer will be primarily obligated for medical coverage where workers' compensation coverage has been adjudicated as not being applicable. See *Gilroy v General Motors Corp (After Remand),* 438 Mich 330; 475 NW2d 271 (1991).

When health insurers have paid medical expenses that are properly reimbursable by workers' compensation insurance carriers, the health insurers have been allowed to piggyback as intervening plaintiffs onto pending workers' compensation claims, over which the bureau has jurisdiction to award the requisite repayment. *Aetna Life Ins Co*

*v Roose,* 413 Mich 85; 318 NW2d 468 (1982); *Ptak v Pennwalt Corp,* 112 Mich App 490; 316 NW2d 251 (1982). In the reverse situation, the workers' compensation carrier or the state treasurer, as representative of the general fund, will probably have to initiate an ordinary civil action for reimbursement in the absence of voluntary repayment. Such suit can be predicated either on implied contract or, in the alternative, on the basis of equitable or legal subrogation, which, in its legal consequences, is almost indistinguishable from the common-law action for money paid. *Commercial Union Ins Co v Medical Protective Co,* 426 Mich 109; 393 NW2d 479 (1986); *Tel-Twelve Shopping Center v Sterling Garrett Construction Co,* 34 Mich App 434; 191 NW2d 484 (1971); *Detroit v Bridgeport Brass Co,* 28 Mich App 54; 184 NW2d 278 (1970).

Such reimbursement actions, however, would inherently be limited to situations in which the magistrate has rendered an award that specifically requires certain medical benefits, which have been duly provided by the carrier, and later reduced or rescinded by the WCAC or on judicial review. When carriers have properly determined that specifically approved magistrate-ordered benefits are unwarranted, or that charges were excessive, this information will be conveniently at hand for the state treasurer so as to facilitate reimbursement efforts, thereby minimizing the drain on the general fund. In other respects, the carriers are not eligible for reimbursement of their out-of-pocket losses, and so the marketplace, at both ends, provides the requisite inducement for carriers to preserve the economic viability of the workers' compensation system.

I would reverse the decision of the appellate commission, dismissing appellants' appeal for non-

compliance with the magistrate's award, and remand to the appellate commission for determination of the appeal on the merits, or, in the appellate commission's discretion, to permit further remand to the magistrate for clarification of the magistrate's order, or for joinder with appellants' timely demanded hearing under § 847 concerning the propriety of challenged health care services, or, recognizing that such hearing has probably long since been concluded by the magistrate, for consolidation with any appeal from that later decision, or for decision in light of any unappealed findings made at such hearing. For the foregoing reasons, I respectfully dissent.