GARCIA v McCORD GASKET CORPORATION

Docket No. 97957. Argued December 7, 1994 (Calendar No. 7). Decided June 20, 1995.

Mary Garcia was determined to be totally disabled and was awarded worker's compensation in January, 1990. A year later, her employer, McCord Gasket Corporation, appealed to the Worker's Compensation Appellate Commission, seeking to stop payment of benefits, asserting that further medical treatment was not reasonable or necessary, and refusing to make any payments for care or treatment rendered after October, 1990. On June 20, 1991, the WCAC ordered McCord under MCL 418.862(2); MSA 17.237(862)(2), to provide an affirmation of bills received and bills paid and the dates medical services were provided. Instead, McCord moved to remand and consolidate or hold in abeyance, asserting that under MCL 418.315; MSA 17.237(315) fees for treatment were subject to health care services rules, and that under 1991 AACS, R 418.1904(6) it was entitled to expedited treatment. The WCAC then dismissed the appeal for failure to comply with its June 20 order and § 862(2). The Court of Appeals, SHEPHERD and MARILYN KELLY, JJ. (TAYLOR, P.J., dissenting), affirmed (Docket No. 145091). The defendant appeals.

In an opinion by Justice LEVIN, joined by Chief Justice BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, and MALLETT, the Supreme Court *held:*

The WCAC did not err in dismissing the employer's appeal for failure to pay medical benefits during the appeal.

1. MCL 418.862(2); MSA 17.237(862)(2) and 1991 AACS, R 418.1904(6) required McCord's insurer to continue to provide medical benefits awarded by a magistrate during the pendency of an appeal until a different order was entered by a magistrate, the WCAC, the Court of Appeals, or the Supreme Court. Rule 1904(6), paralleling § 862(2), provides in effect that the insurer's filing of an application to stop or limit its liability does not operate as a stay, but entitles the insurer to expedited treatment.

2. The award was not ambiguous because it does not spell out the precise treatment that is within the ambit of any and all reasonable and necessary medical expenses related to

plaintiff's back. Testimony by doctors who had treated the plaintiff provided context for the language of the order. McCord's insurer was obliged, until a different order was entered by a magistrate, the WCAC, the Court of Appeals, or the Supreme Court, to continue to provide treatments for the plaintiff's back that were similar to those that her physicians had provided before the award, as described in their testimony. A magistrate's award cannot properly be faulted as ambiguous because it does not spell out the precise treatments to be administered in the future by the worker's physicians.

3. MCL 418.315(4); MSA 17.237(315)(4) provides that a worker's compensation insurer shall not pay a provider of medical services for any excessive charges or unjustified treatment, and that a provider shall return payments for excessive charges or unjustified treatment. Section 315 further provides that fees and other charges for medical treatment of injured workers shall be subject to rules promulgated by the Department of Management and Budget. Health care services rules were so promulgated, and provide a process for resolving disputes between insurers and providers. Section 315 contemplates that worker's compensation insurers will police compliance with health care services rules by withholding payment when they conclude that the charges are excessive or the treatment is not necessary.

4. When a dispute arises, it is to be resolved according to the dispute resolution provisions. Ordinarily, disputes are resolved without a hearing, sometimes through mediation, and, in a relatively small number of cases, following a hearing. Seventy to eighty percent of all claims are paid voluntarily by worker's compensation insurers or self-insured employers without a hearing. In such cases, the procedures set forth in subsections 1 through 5 of rule 1904 for resolving insurer/provider disputes are applicable, and the insurer may, indeed, withhold payment until the dispute is resolved in accordance with those procedures. When, however, compensation and medical benefits are not paid by the insurer or self-insured voluntarily, subsection 6 of rule 1904 contemplates that, after an award of compensation and medical benefits has been entered by a magistrate, the insurer or a self-insured employer will provide medical benefits until another order is entered by a magistrate, the WCAC, the Court of Appeals, or the Supreme Court, relieving the insurer or the employer of its obligation to make payment. The strictures of subsection 6 of rule 1904 harmonize the language added by 1985 PA 103, providing that an appeal to the WCAC "shall not operate as a stay of providing medical benefits

required by the terms of the award," with the earlier enacted language of § 315, providing that a health care provider shall not receive, and an insurer shall not pay, charges deemed by the carrier to be excessive or for unjustified treatment.

5. This is not a case in which an insurer asserted that a particular treatment was unnecessary or that a particular charge was excessive, or even that ambiguity of an award left it in doubt regarding the extent of its responsibility. Rather, the insurer asserted that no further medical treatment was necessary. Section 315 and the health care services rules do not contemplate that an insurer, after an award has been entered, can withhold all payment for medical benefits absent a determination by a magistrate or an appellate tribunal that no further medical treatment is necessary. If an insurer, simply by filing a petition to stop benefits, could deny a worker—found by a magistrate after a full hearing to have been disabled and entitled to compensation and medical benefits—payment of medical benefits until another hearing and determination by a magistrate or an appellate tribunal whether further medical treatment was justified, § 862(2) would be deprived in many cases of meaningful effect. Neither § 315 nor the health care services rules empower an employer to ignore an order of a magistrate awarding medical benefits. The petition to stop benefits filed by McCord in January, 1991, was just that—a petition, not an order of a magistrate or appellate tribunal authorizing the suspension or stoppage of payment for all medical care or treatment.

Affirmed.

Justice WEAVER took no part in the decision of this case.

201 Mich App 697; 506 NW2d 912 (1993) affirmed.

*Richard B. Jenks* (*Daryl Royal,* of counsel), for the plaintiff.

*Evans, Pletkovic, Hays & Rhodes, P.C.* (by *John J. Hays*), for the defendants.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Rose A. Houk* and *Ray W. Cardew, Jr.,* Assistant Attorneys General,

for Michigan Bureau of Worker's Disability Compensation.

LEVIN, J. The question presented is whether the Worker's Compensation Appellate Commission erred in dismissing the employer's appeal for failure to pay medical benefits during the appeal. We hold that the WCAC did not err, and affirm the decision of the Court of Appeals[1] affirming the dismissal by the WCAC.

I

The magistrate found that Mary Garcia was totally disabled and awarded worker's compensation benefits to be paid by defendant McCord Gasket Corporation.[2] The order[3] provided that benefits were to be paid until the further order of the bureau, and that McCord shall also be "responsible for medical expense(s) pursuant to Section 315[4] as follows: Any and all reasonable and necessary medical expenses related to plaintiff's back et sequelae."

A

As stated by the Court of Appeals, "[n]umerous disputes relating to the reasonableness and neces-

[1] 201 Mich App 697; 506 NW2d 912 (1993).

[2] The order and subsequent orders also directed defendant National Union Fire Insurance Company, McCord's insurer, to pay the benefits, and to take other actions. There were also filings by Crawford & Company, which processes medical claims for McCord and Union Fire. Because Union Fire and Crawford, and their attorneys, were all acting for McCord, they are individually and collectively referred to as McCord.

[3] Dated January 9, 1990, mailed January 25, 1990.

The injury dates were September 17, 1979, January 21, 1987, and March 18, 1987.

Depositions were taken and hearings were held in the fall of 1988, and the case was submitted for decision on December 1, 1988.

[4] MCL 418.315; MSA 17.237(315).

sity of various medical treatments followed."[5] A
year after the award was entered in January,
1990, a "petition to stop benefits" was filed by
McCord on January 8, 1991. A month later, on
February 5, 1991, Garcia moved for dismissal of
McCord's appeal to the WCAC from the magis-
trate's decision asserting that McCord had "re-
fused and denied payment of medical benefits
required by the terms of the award"[6] contrary to
§ 862(2), which provides that the filing of a claim
for review of a magistrate's decision "shall not
operate as a stay of providing medical benefits"
awarded by the magistrate, and that medical bene-
fits shall be paid from and after the date of the
award until final determination of the appeal.[7]

[5] 201 Mich App 700.

[6] Garcia's motion asserted, and McCord admitted, that McCord had
filed a notice of dispute with the bureau in October, 1990, stating that
Garcia's request to refer to a visiting nurse association and Dr.
Fernando Diaz was denied by McCord pending results of independent
medical examinations, and that McCord had responded to medical
bills submitted by Garcia by filing another notice of dispute in
December, 1990, stating that on the basis of reports attached to the
notice of dispute "further medical treatment is not reasonable or
necessary" and that it had indicated that it will not be paying
medical bills submitted, and had filed an application to stop benefits
in light of new medical reports.

[7] The following subsection 2 was added to § 862 of the act by 1985
PA 103:

A claim for review filed pursuant to section 859a or 864(11) of
a case for which an application under section 847 is filed after
March 31, 1986 shall not operate as a stay of providing medical
benefits required by the terms of the award. Medical benefits
shall be provided as of the date of the award and shall continue
until final determination of the appeal or for a shorter period if
specified in the award. Benefits accruing prior to the award
shall be withheld until final determination of the appeal. If the
benefit amount is reduced or rescinded by a final determina-
tion, the carrier shall be reimbursed for the amount of the
expenses incurred in providing the medical benefits pending
the appeal in excess of the amount finally determined. Reim-
bursement shall be paid upon audit and proper voucher from
the general fund of the state. If the award is affirmed by a final
determination, the carrier shall provide all medical benefits

McCord responded to Garcia's motion to dismiss, stating that it had "considered all requests for payment of medical benefits and [had] paid those which were reasonable and necessary in accordance" with the magistrate's decision, and had "denied payment on other requests which are not reasonable or necessary . . . ."[8] McCord did not specify which "requests for payment" had been paid, and which had been denied, nor did it specify why a particular request was not reasonable or necessary.

McCord asserted that § 862(2) provides only for furnishing medical benefits "required by the terms of the award,"[9] that the magistrate's award in the instant case "does not provide the terms by which medical benefits would be required," and that the award provided "no guidance" concerning "which medical providers and care and treatment [were] necessary or which amount was reasonable."[10]

### B

The WCAC, on June 20, 1991, ordered McCord to

which have become due under the provisions of the award, less any benefits already provided for. Interest shall not be paid on amounts paid pending final determination. [MCL 418.862(2); MSA 17.237(862)(2).]

[8] McCord asserted that it had "used well established guidelines for customary and reasonable charges, necessity of medical treatment backed by impartial medical evaluation and opinion by specialists in the field . . . ."

[9] See n 7.

[10] McCord continued that it had "consulted with the State of Michigan Workers' Compensation Health Care Services Rules where applicable as well as independent medical evaluations and opinions as to the necessity of ongoing medical treatment."

McCord also asserted that Garcia's motion "incorrectly suggests that no medical benefits have been provided while this appeal has been pending." This was untrue because McCord had "paid those benefits which are reasonable and necessary as established by impartial and customary guidelines."

provide it within thirty days "an affirmation of the bills that have been received, the date the medical services were provided, and a showing that the bills have been paid pursuant to the magistrate's order of January 22, 1989, awarding reasonable and necessary medical expenses related to plaintiff's back. *Failure to provide timely compliance with MCL 418.862(2) shall subject defendants' appeal to dismissal.*" (Emphasis added.)

McCord did not provide the affirmation of bills received and dates medical services were provided, and did not show that such bills had been paid. Rather, McCord responded on July 17, 1991, to the WCAC order by filing a motion to remand and consolidate or hold in abeyance, stating that disputes had arisen concerning the portion of the award requiring payment of reasonable and necessary medical expenses, and stating:

> What expenses or treatment are "reasonable and necessary" were not spelled out in the Magistrate's decision and, therefore, has [sic] been a matter of differing interpretation. Defendant submits that it has paid all "reasonable and necessary" expenses since the date of the Magistrate's decision.

McCord's motion noted that a hearing was scheduled for July 31, 1991, on its application for a hearing objecting to the reasonableness and necessity of the medical expenses being claimed by Garcia. The motion continued that § 315[11] provides

[11] Section 315 provides that an employer shall furnish to an employee who receives a work-related personal injury "reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment" when needed.

Section 315 was amended by 1981 PA 195, and subsequently amended by 1985 PA 103, to provide that "fees and other charges for any treatment or attendance, service, devices, apparatus, or medicine" shall be subject to rules promulgated by the Department of

that all fees and charges for treatment were subject to the health care services rules, that those rules provide for resolving disputes between carriers and health care providers,[12] and that rule 1904(6),[13] concerning the continuation of medical

___

Management and Budget establishing maximum charges. MCL 418.315(2); MSA 17.237(315)(2).

[12] Health care services rules were promulgated as 1991 AACS, R 418.101 *et seq.*, and provide in part 19 (rules 1901-1905) a process for resolving differences between carrier and provider regarding charges made by providers.

[13] Rule 1904 provides:

(1) When a carrier adjusts or rejects a bill or portion thereof pursuant to these rules, a notice given pursuant to R 418.1901(1) creates an ongoing dispute for the purpose of section 801 of the act. The time for making payment of a bill under section 801 of the act shall not run unless the bill is properly submitted according to applicable rules and statutes.

(2) Any dispute that concerns any of the following shall be resolved as if it were an application for mediation or hearing filed under section 847 of the act:

(a) The medical appropriateness of health care or a health care service.

(b) Utilization of health care or a health care service.

(c) The need for health care or a health care service.

(d) Any dispute over the cost of health care or a health care service.

(3) Where the dispute results in the denial of medical treatment for a worker, or where there is a petition by an employer to stop its liability for medical benefits previously ordered, including proceedings under subrule (6) of this rule, the dispute shall receive the same expedited treatment accorded to 60-day cases under section 205 of the act, except that the bureau may refer the matter to mediation under section 223 of the act.

(4) A dispute under this rule may be submitted to arbitration under section 864 of the act.

(5) A dispute under this rule may be handled as a small claim under section 841(2) to (10) of the act if it meets the requirements set forth in that section.

(6) If a carrier is required by the terms of an award to provide medical benefits, the carrier shall continue to provide those benefits until there is a different order by any of the following entities:

(a) A magistrate.

(b) The appellate commission.

(c) The court of appeals.

(d) The supreme court.

benefits during an appeal, provides for expedited treatment accorded to sixty-day cases when a carrier files an application to stop or limit its liability.[14]

The WCAC, on August 30, 1991, denied the motion for remand and consolidation or to hold in abeyance, and granted Garcia's motion to dismiss the appeal for failure to comply with § 862(2) and the WCAC's order of June 20, 1991.[15]

C

The Court of Appeals affirmed the dismissal, holding that the WCAC has the implied authority to dismiss for noncompliance with § 862(2), citing this Court's decision in *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977).[16]

This subrule shall not preclude the use of the maximum allowable payments provided by these rules for the payment of bills by carriers. When a carrier files an application to stop or limit its liability under this subrule, it shall receive the expedited treatment provided for under subrule (3) of this rule.

(7) If the bureau believes that a provider is not in compliance with these rules, the bureau may file an application for mediation or hearing under this rule.

[14] McCord contended that because it had filed an application for hearing seeking to stop or limit its liability, it was in compliance with § 315 and the health care services rules, and that "the dismissal of its appeal should [not] be subject to consideration at this time, if at all." McCord asked the WCAC to remand the case to the bureau for a consolidation with the subject matter of the hearing scheduled for July 31, 1991, or hold the motion to dismiss its appeal in abeyance to allow the parties to fully develop the record relating to the dispute.

Garcia responded to the motion to remand and consolidate or hold in abeyance, stating that McCord had failed to comply with the WCAC's order of June 20, 1991, and that it was attempting to obfuscate and "delay the relief of the issues presented" in the motion to dismiss.

[15] One commissioner would have denied both motions.

[16] In *McAvoy,* this Court held that the Worker's Compensation Appeal Board was empowered to dismiss an appeal for failure to pay seventy percent of the weekly benefits following an award, although § 862 (MCL 418.862; MSA 17.237[862]), requiring such payment, did

The majority said that when McCord "refused to pay the medical bills as required" by the magistrate's and WCAC's orders, it subjected itself "to the possibility of a dismissal as stated in the commission's order."[17]

One of the judges on the panel dissented. He said that if the only question presented was whether the WCAC, "under its implied power to enforce § 862(2)," could properly dismiss an appeal by an employer who ignores a magistrate's order requiring payment of medical benefits, he would join in the majority. He dissented because § 315 contemplates that the employer's insurance carrier will "monitor closely medical treatment for injured workers with an eye to detecting both charges in excess of the schedules of maximum fees promulgated by the agency and any overutilization."[18]

The dissenting judge said that the "problem in this case" was that the magistrate's order was not "clear enough to make apparent what medical expenses are required." It "merely recapitulates

not expressly provide therefor. This Court said that the power to dismiss appeals for noncompliance was "necessarily implied from the statute itself." *McAvoy,* p 461.

[17] The majority continued:

> What [McCord] should have done with the disputed medical bills was to pay them, or the maximum allowed under the rules if that amount was less, and then proceed with an expedited hearing as provided in Rule 1904(3) and (6), *supra.* [201 Mich App 705.]

[18] 201 Mich App 710. The dissenting judge continued:

> This becomes important to more than the carriers when the state treasury, pursuant to the above-cited § 862(2), is brought forward as the guarantor of last resort when, despite a carrier's best efforts, medical benefits that are unnecessary or overpriced have been provided in accordance with a magistrate's order that is later overturned. [*Id.*]

the statutory language" that obligates the employer to pay reasonable and necessary medical expenses under § 315, "albeit confining that obligation to plaintiff's back condition. The award does not indicate what particular medical treatment ought to be included, nor does it provide criteria from which it could reliably be determined by the appellants, either in advance or in retrospect, that a particular prognosticated treatment, prosthetic, or prophylactic is within the magistrate's concept of 'reasonable and necessary' medical treatment related to plaintiff's back."[19]

II

McCord notes that § 862(2) does not expressly

---

[19] *Id.,* pp 710, 711. The dissenting judge continued:

The upshot is that, under the majority opinion, the insurance carrier must pay all medical bills that are facially related to any kind of treatment for plaintiff's back or arguably related conditions, which obligation is limited only by the maximum fee set by administrative regulation for any individual treatment, attendance, service, device, apparatus, or medicine. . . .

. . . This will then predictably create a situation, unless reversed, in which neither employees as a class, nor insurance carriers as a group, have any particular incentive under this construction of the act to challenge the necessity for or charge —within limits fixed by regulation—made for any medical service, because reimbursement from the general fund is guaranteed. . . .

The majority finds support for its position in Rule 1904(6), but the obligation imposed by the rule is in turn derivative, once again, being based on the requirement imposed "by the terms of an award to provide medical benefits." The rule, like the statute, is written in general terms, but can only be properly understood to apply to terms of a magistrate's award to provide medical benefits that are definite, where the requisite certainty is measured by whether the award can be made judicially enforceable under § 863. [*Id.,* pp 712-713.]

The dissenting judge would have reversed and remanded to the WCAC for a determination of the appeal on the merits, or to permit further remand to the magistrate for clarification of the order, or for joinder with McCord's request for a hearing concerning the propriety of the charges. *Id.,* pp 715-716.

provide that the WCAC may dismiss an employer's appeal for failure to continue to provide medical benefits "until final determination of the appeal," and contends that it lacks such power. We agree with the Court of Appeals, for essentially the same reasons set forth in *McAvoy,* that the WCAC has the implied authority to dismiss appeals for non-compliance with § 862(2).

III

We affirm the decision of the Court of Appeals affirming the order of the WCAC dismissing McCord's appeal because § 862(2) and rule 1904(6) required McCord's insurer to continue to provide medical benefits awarded by a magistrate during the pendency of an appeal until a different order was entered by a magistrate, the WCAC, the Court of Appeals, or this Court. Rule 1904(6), paralleling § 862(2), provides in effect that the insurer's filing of an application to stop or limit its liability does not operate as a stay, but entitles the insurer to expedited treatment.

Nor do we find the award to be ambiguous because it does not spell out the precise treatment that is within the ambit of "[a]ny and all reasonable and necessary medical expenses related to plaintiff's back et sequelae." Four doctors, three of whom were specialists who had treated Garcia and one of whom appears to have coordinated the treatment, testified concerning their findings and the treatments they had administered. Their testimony provided context for the language of the order, "reasonable and necessary medical expenses related to plaintiff's back et sequelae." McCord's insurer was obliged to "continue to provide," until a different order was entered by a magistrate, the WCAC, the Court of Appeals, or this Court, treat-

ments for Garcia's back that were similar to those that her physicians, before the award, had provided as described in their testimony.

Magistrates do not ordinarily, if ever, spell out in an initial award of worker's compensation the particular treatments to be administered by an injured worker's physicians. The hearing, as here, may have concluded over a year before the award was entered. The patient, as here, may have moved from one physician to another. Different physicians often recommend and administer different treatments for the same ailment. The worker's condition may have worsened or improved, requiring a change in treatment. A magistrate's award cannot properly be faulted as ambiguous because it does not spell out the precise treatments to be administered in the future by the worker's physicians.

A

Section 315(4) provides that a worker's compensation insurer shall not pay a provider of medical services for any excessive charges or unjustified treatment, and that a provider shall return payments for excessive charges or unjustified treatment.[20] Section 315 further provides that fees and

_____

[20] If a carrier determines that a health facility or health care provider has made any excessive charges or required unjustified treatment, hospitalization, or visits, the health facility or health care provider shall not receive payment under this chapter from the carrier for the excessive fees or unjustified treatment, hospitalization, or visits, and shall be liable to return to the carrier any such fees or charges already collected. The department of management and budget may review the records and medical bills of any health facility or health care provider determined by a carrier to not be in compliance with the schedule of charges or to be requiring unjustified treatment, hospitalization, or office visits. [MCL 418.315(4); MSA 17.237(315)(4).]

other charges for medical treatment of injured workers shall be subject to rules promulgated by the Department of Management and Budget.[21] Health care services rules were so promulgated, and provide a process for resolving disputes between insurers and providers.[22]

We agree with the dissenting judge that § 315 contemplates that worker's compensation insurers will police compliance with health care services rules by withholding payment when they conclude that the charges are excessive or the treatment is not necessary. When a dispute arises, it is to be resolved according to the dispute resolution provisions. Ordinarily, disputes are resolved without a hearing, sometimes through mediation, and, in a relatively small number of cases, following a hearing.

Seventy to eighty percent of all claims are paid voluntarily by worker's compensation insurers or self-insured employers.[23] In those cases, the procedures set forth in subsections 1 through 5 of rule 1904[24] for resolving insurer/provider disputes are applicable, and the insurer may, indeed, withhold payment until the dispute is resolved in accordance with those procedures.

When, however, compensation and medical benefits are not paid by the insurer or self-insured voluntarily, subsection 6 of rule 1904 contemplates that, after an award of compensation and medical benefits has been entered by a magistrate, the insurer or a self-insured employer will provide medical benefits until another order is entered by

[21] MCL 418.315; MSA 17.237(315).

[22] R 418.101 *et seq.*

[23] Bureau of Worker's Disability Compensation Annual Report, 1993, pp 1, 10. 88,259 injuries were reported during 1993; 22,496 petitions were received.

[24] See n 13 for text.

a magistrate, the WCAC, the Court of Appeals, or this Court, relieving the insurer or the employer of its obligation to make payment.

Where benefits are not paid voluntarily, and benefits are awarded, a number of years generally will have elapsed between the injury and the entry of an award. Section 862(2) provides that medical "[b]enefits accruing prior to the award shall be withheld until final determination of the appeal." It is thus only in the relatively smaller number of cases in which a magistrate enters an award and a dispute arises concerning medical benefits accruing after the award that the insurer is required to make payments and cannot withhold payment until an adjudication of disputes that arise after entry of the award.

The strictures of subsection 6 of rule 1904 harmonize the language added by 1985 PA 103, providing that an appeal to the WCAC "shall not operate as a stay of providing medical benefits required by the terms of the award," with the earlier enacted language of § 315, providing that a health care provider shall not receive, and an insurer shall not pay, charges deemed by the carrier to be excessive or for unjustified treatment.

B

In the instant case, McCord, a year after the magistrate's award was entered in 1990, filed, on January 8, 1991, a "petition to stop benefits," on the basis of reports of physicians who had examined Garcia in November, 1990, asserting that further medical treatment was not reasonable or necessary.

This, thus, is not a case in which an insurer asserted that a particular treatment was unnecessary or that a particular charge was excessive, or

even that ambiguity of an award left it in doubt regarding the extent of its responsibility. In the instant case, McCord's insurer asserted, rather, that no further medical treatment was necessary. Section 315 and the health care services rules do not contemplate that an insurer, after an award has been entered, can withhold all payment for medical benefits absent a determination by a magistrate or an appellate tribunal that no further medical treatment is necessary.

If an insurer, simply by filing a petition to stop benefits, could deny a worker—found by a magistrate after a full hearing to have been disabled and entitled to compensation and medical benefits—payment of medical benefits until another hearing and determination by a magistrate or an appellate tribunal whether further medical treatment was justified, § 862(2), providing that "[a] claim for review . . . shall not operate as a stay of providing medical benefits required by the terms of the award," would be deprived in many cases of meaningful effect.

C

We do not wish to be understood as saying that the WCAC could not, in the exercise of discretion, refrain from dismissing an appeal where the insurer has timely sought a hearing—which, because of scheduling or other unavoidable difficulty, has been unduly delayed—respecting a claim that particular treatments, as distinguished from all medical care and treatment, are unnecessary or that particular charges are excessive.

McCord did not, following the WCAC's order of June 20, 1991—requiring an affirmation of the bills received and paid—respond by showing that it had paid all bills except specifically identified

bills. McCord claimed, rather, that all charges from and after October, 1990, were unnecessary and excessive because physicians had reported to it, on the basis of examinations in November, 1990, that in their opinion no further care or treatment was justified. Although McCord's petition to stop benefits was not filed until January, 1991, it refused to pay anything at all in respect to any bill for care or treatment rendered from and after October, 1990.

Neither § 315 nor the health care services rules empower an employer to so ignore an order of a magistrate awarding medical benefits. The petition to stop benefits filed by McCord in January, 1991, was just that—a petition, not an order of a magistrate or appellate tribunal authorizing the suspension or stoppage of payment for all medical care or treatment.

We conclude, on the facts and circumstances of this case, that the WCAC did not abuse its discretion in dismissing McCord's appeal.

Affirmed.

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, and MALLETT, JJ., concurred with LEVIN, J.

WEAVER, J., took no part in the decision of this case.